**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JACK MILLER** | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **Case No.:** |
| | § | |
| **RENE VALENCIANO, JAMES LOPEZ** | § | |
| **and CITY OF OLMOS PARK** | § | |
| *Defendants.* | § | |

---

### COMPLAINT AND JURY DEMAND

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Jack Miller ("Plaintiff"), by and through his attorneys, complain of Defendants Rene Valenciano, James Lopez, and the City of Olmos Park, and respectfully alleges as follows:

### I.      JURISDICTION AND VENUE

1.      This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. 1983 and the First, Fourth, and Fourteenth Amendments of the United States Constitution.

2.      Jurisdiction of this Court is found upon 28 U.S.C. § 1331 since this action arises under the Constitution and the laws of the United States.

3.      Venue is proper in the United States District Court for the Western District of Texas because the majority of events complained of occurred in this district.

4.      Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against Defendants for

1

the violations of Plaintiff's Constitutional rights and harm caused by Defendants' action and inaction.

## II.  PARTIES

1.  Plaintiff, JACK MILLER ("Plaintiff") is a law-abiding citizen of the State of Texas.

2.  Defendant, RENE VALENCIANO ("Defendant Chief Valenciano") is a Texas resident and at all times relevant to this complaint, was the Chief of Police for the City of Olmos Park Police Department.

3.  Defendant, JAMES LOPEZ ("Defendant Officer Lopez") is a Texas resident and at all relevant times to this complaint acted as a police officer for the City of Olmos Park Police Department. Defendant Officer Lopez is being sued in his individual capacity.

4.  Defendant, CITY OF OLMOS PARK ("Defendant City"), is a municipality in the State of Texas.

## III.  FACTUAL ALLEGATIONS

5.  Plaintiff is a constitutional rights activist who commonly exercises his rights through peaceful protests and peaceful demonstrations. Defendants are aware of Jack Miller and understand that his intentions are to engage in constitutionally protected activity.  Nonetheless, Defendants target him for unlawful detention and arrest, and falsely charge him with crimes they know he did not commit.

6.  Specifically, on February 6, 2020, Plaintiff Miller was walking on a public sidewalk in Olmos Park in front of City Hall with a toy rifle slung behind him.  Chief Valenciano observed Plaintiff Miller from inside City Hall.  Chief Valenciano and Officer Lopez then walked outside and unlawfully arrested Plaintiff Miller.

7.      The following paragraphs provide context to Defendant City's longstanding policy to violate the rights of law-abiding citizens engaged in constitutionally protected activity and establish that Defendants recognize that Plaintiff's only wrongdoing (in Defendants' eyes) is peacefully protesting.

8.      **February 5, 2018**.  On February 5, 2018, Constitutional Rights activist, Mike Thompson (non-party), was arrested in the 4300 block of McCullough Avenue, Olmos Park, Texas by Olmos Park Police Sergeant Ruiz ("Sergeant Ruiz") and Olmos Park Police Officer Viera ("Officer Viera") simply because he was open carrying a rifle.[1]  Plaintiff Jack Miller was with Mr. Thompson during this event, and Plaintiff began questioning the officers why Thompson, a black male, was being arrested. Officer Viera stated that he did not arrest any other individual open carrying because no one called 9-1-1 on them.[2]

9.      **February 10, 2018**.  Plaintiff—in protest of Mr. Thompson's arrest, and to raise awareness to Olmos Park's handling of citizens lawfully open carrying firearms—openly carried a rifle in the 4300 block of McCullough Avenue, the same location Mr. Thompson was arrested.[3] Olmos Park police officers detained Plaintiff at gunpoint and cited Plaintiff for open carrying a firearm in violation of Section 24-85 of the Olmos Park City Code of Ordinances, a since-repealed ordinance.[4]  This charge was promptly dismissed.

10.      **February 13, 2018.**  Around this period, Plaintiff attempted to open a dialogue with Chief Valenciano.  Jack Miller told him that he thought that the Section 24-85 ordinance was inconsistent with state law.  Jack Miller requested an in-person meeting, but Chief Valenciano

---

[1] https://www.youtube.com/watch?v=FxgaYsh0cQA. (0:44-1:20).
[2] *Id.* (6:30-7:30).

[3] https://www.youtube.com/watch?v=rUGrQtExsgs (1:30-6:20).

[4] https://www.youtube.com/watch?v=rUGrQtExsgs (6:20-20:41).

declined.  On this day, Defendant Valenciano informed his officers that it was lawful to arrest people for disorderly conduct for simply carrying a rifle in public.

11.     **February 16, 2018**.  Defendant Chief Valenciano instructed his assistant, who is now the Olmos Park City Secretary, Kyndra Munoz, to create a PowerPoint. Chief Valenciano added information to the PowerPoint presentation that focused on Plaintiff.  In the PowerPoint presentation, Defendant Chief Valenciano compared Plaintiff to the likes of mass shooters and cop killers.  Chief Valenciano also put forth his position that it was lawful to arrest people for disorderly conduct for simply carrying a rifle in public.

12.     **February 20, 2018**.  In continuance of his peaceful protest to bring awareness to what Plaintiff thought was unconstitutional conduct directed toward law-abiding citizens that openly carry firearms, Plaintiff peacefully stood in the 4300 block of McCullough Avenue with a rifle slung around him.  Consistent with Defendants' policy, custom, and practice, Olmos Park police officers arrived on scene, held Plaintiff at gunpoint, and then detained and arrested him for disorderly conduct.  Defendants were clearly aware that Plaintiff had a license to carry firearms, and they knew what his intentions were.

13.     **February 21, 2018**.  Plaintiff posted on his Facebook page that he disagreed with Olmos Park's position that they could arrest anyone carrying a rifle in public.  The Facebook post called for a mass open carry walk through Olmos Park.  Defendant Chief Valenciano's PowerPoint presentation contained a screenshot of Plaintiff's Facebook post.  Chief Valenciano knew that Plaintiff would continue peacefully protesting to bring awareness to the way Defendants treated law abiding citizens carrying firearms.

14.     **March 1, 2018**.  Chief Valenciano presented his PowerPoint presentation to local, state, and federal law enforcement officials.  The presentation focused on Jack Miller, and others

4

that advocated for the right to openly carry firearms in accordance with state law. Chief Valenciano viewed these individuals as dangerous, anti-government people that were a threat to safety. He also presented his argument that simply carrying a firearm was disorderly conduct.

15.     **March 5, 2018**. Chief Valenciano directed the dissemination of his PowerPoint to dozens of local, state, and federal law enforcement officials. Chief Valenciano did not agree with Jack Miller's views, and he hoped that other law enforcement agencies would assist him in finding ways to arrest or detain Jack Miller. At the very least, the dissemination of Chief Valenciano's narrative about Plaintiff being dangerous put law enforcement personnel on alert should they interact with him.

16.     **March 17, 2018**. In another peaceful demonstration at 4300 block of McCullough Avenue, Plaintiff held signs that questioned why Chief Valenciano would not talk to him, and that Chief Valenciano hired liars. To also prove his point about whether his conduct was in fact disorderly, he attached to his hip a holstered replica pistol (commonly used as training device).

17.     Defendant Officer Lopez, carrying out the unconstitutional policy, practice, and custom of unlawfully targeting law abiding citizens that openly carry firearms, held Plaintiff at gunpoint.[5] Defendant Officer Lopez detained Plaintiff, disarmed him of the replica pistol, put him in handcuffs, and placed in the back of his police vehicle. Once Defendant Officer Lopez realized the firearm was not real, he released Plaintiff.

18.     After this event, Christopher Grisham (non-party), with Open Carry Texas, submitted an open records request to the City of Olmos Park to find out why they are holding law abiding citizens at gunpoint, and then falsely charging them. He also wanted to know whether a written policy existed.

---

[5] https://www.youtube.com/watch?v=RzkaLIYzB6A&t=11s (1:06-3:08).

19.     Chief Valenciano started researching Christopher Grisham and Open Carry Texas.

20.     **March 22, 2018**.  A citizen emailed Chief Valenciano and the City Council sharing that Open Carry Texas was organizing an open-carry event in Olmos Park on April 7, 2018.  The event was called "Olmos Park PD Firearms Transportation Education Petition for Redress."[6] Defendants immediately notified Alamo Heights (since they handle dispatch calls for Olmos Park).

21.     **March 26, 2018**.  Mr. Grisham, with Open Carry Texas, called Chief Valenciano. During the call, was already aware that Open Carry Texas was planning to come to Olmos Park. Mr. Grisham asked Chief Valenciano whether the City was going to respond to his open records request, and whether it was the policy of the Olmos Park Police Department to "pull[] their handguns and threaten[] a citizen[.].  The Chief responded, "No . . . obviously that's—that's not anyone's policy."  Grisham represented that he planned to go to Olmos Park, but stated, "I'm afraid that you guys are gonna threaten me and put me on my face at gunpoint for doing nothing more than exercising my rights . . . ."  Following the call, Chief Valenciano briefed Defendant City.

22.     **March 27, 2018**.  Grisham organized a small peaceful protest in Olmos Park at the 4300 block of McCullough Avenue.  Alamo Heights dispatch informed Olmos Park police officers of the protest, and in response to Chief Valenciano requesting the nature of the call, was told it was the "Second Amendment people."

23.     Consistent with policy, practice, and custom, Olmos Park police officers immediately arrived on scene with weapons drawn demanding that individuals get on the ground.

---

[6] https://www.facebook.com/events/1701444096542864/?active_tab=about

24.     Defendant Chief Valenciano soon arrived, walked up to Mr. Grisham, and discharged his taser at him.[7] Mr. Grisham and two others were arrested and charged.

25.     At the conclusion of the incident, Chief Valenciano reported to dispatch that he had "quashed the rebel."

26.     **March 29, 2018**.  Olmos Park held a special session to repeal the ordinance in question.  Other cities in the area quickly followed suit.

27.     **April 7, 2018**.  Hundreds of law-abiding citizens marched through Olmos Park while exercising their right to openly carry firearms.  Upon information and belief, no one was held at gunpoint, detained, arrested, or falsely charged for disorderly conduct.

28.     **February 5, 2020.**  Plaintiff was sitting in his truck in a city parking lot open to the public that was near Olmos Park City Hall.  Chief Valenciano, well-aware of Jack Miller, approached Jack Miller and instructed him to leave.  Chief Valenciano did not have any valid reason to order Plaintiff to leave.  Nonetheless, Plaintiff stated he was going to comply because he did not want to be hurt like Mr. Grisham.  Defendant Valenciano responded, "You'll know if I hurt you."

29.     **February 6, 2020**.  Plaintiff was standing in a public space across the street and about a half a block away from the Olmos Park City Hall.  Plaintiff was there to exercise his First Amendment rights as so afforded to him as a law-abiding citizen of the United States.[8] Plaintiff had a video camera in his hands and a replica rifle tightly slung on his back with the muzzle aimed toward the ground.

---

[7] https://www.youtube.com/watch?v=GrDAPPiu1QE (5:45-6:00).

[8] https://www.youtube.com/watch?v=FTc8zf7oAqY&t=132s.

30.     Soon after Plaintiff arrived, Defendant Chief Valenciano and Defendant Officer Lopez immerged from City Hall and immediately approached Plaintiff.

31.     Despite knowing Plaintiff did not commit any crimes, was in a public space, and was legally carrying what they thought was a rifle, Defendant Chief Valenciano, consistent with Defendants' longstanding policy, custom and practice, ordered Plaintiff to leave the area.[9] Without resisting, Plaintiff informed Defendant Chief Valenciano and Defendant Officer Lopez that was walking towards his vehicle and requested the officers not to touch him.

32.     Defendant Chief Valenciano and Defendant Officer Lopez immediately grabbed Plaintiff's left arm, even though Plaintiff was not actively or passively resisting.  Defendant Chief Valenciano began using unnecessary pain compliance on Plaintiff to further subdue him.

33.     Defendant Chief Valenciano twisted Plaintiff's left arm, deployed an unreasonably aggressive wrist lock tactic on Plaintiff, and forced him to the ground. Defendant Valenciano's actions caused Plaintiff sever pain. Plaintiff continued to comply with all the Defendants' demand and remained un-resistive. However, this did not stop Defendants from continuing to use excessive force.

34.     While Plaintiff remained on the ground, grousing in agonizing pain, Defendant Chief Valenciano picked up Plaintiff's left leg and slammed the leg into the asphalt pavement.[10] Despite knowing Plaintiff had a shoulder injury to his left shoulder, Defendant Chief Valenciano, with the assistance of Defendant Officer Lopez, forcefully picked Plaintiff from the asphalt and lead him out of the public view.

---

[9] At this time, there was no investigation in the area or other circumstance that would cause the need for Plaintiff to move from a public space.
[10] https://www.youtube.com/watch?v=FTc8zf7oAqY&t=132s (2:34-2:38).

35.     Even though Plaintiff's arrest did not occur at or near his vehicle, Defendants used their unlawful arrest to seize his vehicle.  Defendants also unlawfully seized the contents within the vehicle, which belonged to other people.  Defendants eventually released the vehicle after citing an "investigative hold" (even though Defendants never secured any warrant to actually inspect the vehicle.).

36.     As a result of Plaintiff exercising his constitutional rights, Defendant Chief Valenciano and Defendant Officer Lopez procured and forwarded four charges to be filed against Plaintiff for assault of a peace officer[11], resisting arrest[12], disorderly conduct for displaying a firearm[13], and obstruction of a passageway.[14]

37.     Except for the resisting arrest charge (which Plaintiff is vehemently defending against), the charges were dismissed by the Bexar County District Attorney's office.

38.     Upon information and belief, Plaintiff believes that Defendants continue to cause the resisting arrest charge to be prosecuted in an effort to cease this civil action from arising.

39.     As a result of Defendants actions, Plaintiff's First Amendment rights have been chilled, and he continues to suffer from physical injury protruding from the events of February 6, 2020.

40.     Plaintiff also asserts that Defendant Valenciano continued (and continues) to develop his PowerPoint presentation, and collected different intelligence on Plaintiff over the years, and continued to share this information with law enforcement agencies.  Plaintiff asserts

---

[11] Bexar County Case Number 556674.

[12] Bexar County Case Number 633088.

[13] Bexar County Case Number 633089.

[14] Bexar County Case Number 633090.

that Defendant Valenciano did this, because he knew that Plaintiff regularly interacts with law enforcement officers, and Defendant intended to escalate those interactions to Plaintiff's detriment.

## IV.    CLAIMS AGAINST DEFENDANTS

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Retaliation for Protected Conduct, February 6, 2020 Incident)

41.    Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

42.    At all times relevant, Defendant Chief Valenciano and Defendant Officer Lopez were acting under color of State law.

43.    Plaintiff has a First Amendment right to peacefully protest and petition for redress of grievances.

44.    Plaintiff was engaging in constitutional protected conduct of petitioning for redress of grievances at all times relevant to this complaint.

45.    In retaliation for engaging in protected conduct, Defendant Chief Valenciano and Defendant Officer Lopez intentionally, knowingly, maliciously, and/or unreasonably detained Plaintiff through use of unnecessary pain compliance and unreasonable use of force. Defendants, by and through their recommendation, cause Plaintiff to be charged with four crimes. All of these actions were done without a warrant, probable cause, or any legal basis.

46.    Plaintiff had a clearly established constitutional right to be in a public space/forum.

47.    Defendants had no knowledge of any facts or circumstances which would lead a reasonable person in the same or similar circumstances, to believe that Plaintiff had committed a crime or was about to commit a crime.

48.    Such a retaliation would serve as a deterrent to a person of ordinary firmness from

engaging in such protected conduct.

49.    There is a casual connection between Plaintiff's constitutionally protected conduct and the adverse retaliatory actions taken by the Defendants.

50.    The Defendants' acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizen of the United States by the First and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

51.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(First Amendment – Retaliation for Protected Conduct, Surveillance Dossier)**

52.    Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

53.    At all times relevant, Defendant Chief Valenciano was acting under color of State law.

54.    Plaintiff has a First Amendment right to peacefully protest and petition for redress of grievances.

55.    Plaintiff was engaging in constitutional protected conduct of petitioning for redress of grievances at all times relevant to this complaint.

56.    In retaliation for engaging in protected conduct, Defendant Chief Valenciano targeted Plaintiff in vast unlawful investigations; labeled Plaintiff to other local, state, and federal law enforcement agencies as anti-government, agitators, and being on par with mass murders and cop killers; unlawfully and without any lawful or other legitimate basis, collected private data and

surveillance on Plaintiff, known associates, and his attorney; and attempted to get other law enforcement agencies to initiate or assist in unlawful investigations into Plaintiff, and to impact future law enforcement interactions with Plaintiff.

57.     At all relevant times, Defendant Chief Valenciano was required to obey the laws of the United States.

58.     Defendant Chief Valenciano's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

59.     Defendant Chief Valenciano's adverse actions was substantially motivated by Plaintiff's petitioning the government for redress of grievances.

60.     Defendant Chief Valenciano intentionally, knowingly, maliciously, reckless, unreasonably, and grossly negligently retaliated against Plaintiff for engaging in protected conduct.

61.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

### COUNT III
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Retaliatory Prosecution)

62.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

63.     Defendant Chief Valenciano and Defendant Officer Lopez, acting under the color of law, coordinated with Bexar County to maliciously induce the process to charge Plaintiff with frivolous criminal charges.

64.     Defendants knew that Plaintiff was not committing any crime.  Specifically, the

basis for the arrest was for disorderly conduct.  However, even under Defendants' ambiguous application of arresting people for disorderly conduct, Defendants have acknowledged under oath previously that carrying a rifle in a manner that Plaintiff was carrying it, is not a manner calculated to cause alarm (a necessary element for disorderly conduct).

65.    Defendants used these false crimes as a pretext to arrest him, because he was not welcome in Olmos Park.  Defendants view Plaintiff as part of the "rebel" that Defendants have a policy, custom, and practice of quashing.

66.    Defendants' coordination effort and conduct to have Plaintiff prosecuted was done in retaliation for Plaintiff engaging in constitutionally protected activity afforded to him by and through the First Amendment.

67.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Unlawful Detention/False Arrest/Unlawful Seizure)**

68.    Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

69.    Defendant Chief Valenciano and Defendant Officer Lopez willfully detained Plaintiff by and through the use of pain compliance and ordering him under him asserted under the color of law.

70.    Plaintiff did not consent to the detainment.

71.    Defendant Chief Valenciano and Defendant Officer Lopez did not have reasonable suspicion or probable cause to detain or arrest Plaintiff. No reasonable officer could have believed

there existed reasonable suspicion or probable cause to detain or arrest Plaintiff.

72.     Defendant Chief Valenciano and Defendant Officer Lopez detained, restrained, and arrested Plaintiff without a warrant or other legal authority.

73.     Defendants knew that Plaintiff was not committing any crime.  They knew that he was peacefully protesting.

74.     Defendants disagree with Plaintiff and view him as a cop killer, anti-government, or anarchist.

75.     Therefore, Defendants, in an effort to trample Plaintiff's rights, opted to detain and arrest him under false pretenses of crimes they knew he did not commit.  As previously stated, Defendants own application of disorderly conduct is inherently clear that strapping a rifle behind your back in a downward position is not disorderly conduct (it is the preferred method of Olmos Park).

76.     Defendants also created meaningful interference with Plaintiff's possessory interests in his property, which was unreasonable because the interference was unjustified by law. Defendants seized Plaintiff's vehicle and personal belongings without any lawful basis.

77.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

### COUNT V
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Excessive Force)

78.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

79.     Defendant Chief Valenciano, acting under the color of law, violated Plaintiff's

constitutionally protected rights. These violations include the right to be free from excessive force.

80.　Defendant Chief Valenciano's used of force was objectively unreasonable.

81.　Defendant Chief Valenciano never gave Plaintiff a lawful order. Defendant Chief Valenciano and/or Defendant Officer Lopez did not have reasonable suspicion to detain Plaintiff. Defendant Chief Valenciano and/or Defendant Officer Lopez did not have probable cause to arrest Plaintiff.

82.　At no point did Plaintiff resist Chief Valenciano and/or Defendant Officer Lopez. Nevertheless, Defendant Chief Valenciano unreasonably used pain compliance on Plaintiff's wrist and shoved Plaintiff to the asphalt. Defendant Chief Valenciano then unreasonably picked up Plaintiff's left leg and threw Plaintiff's leg against the asphalt. Further, Defendant Officer Lopez and Defendant Chief Valenciano, with knowledge of an injury to Plaintiff's left shoulder, picked Plaintiff's full body weight up off of the asphalt by and through his left shoulder.

83.　Plaintiff never exhibited any signs of violence, nor did Defendant Chief Valenciano and/or Defendant Officer Lopez suspect Plaintiff of being a violent criminal. Defendant Chief Valenciano and/or Defendant Officer Lopez were not in a high-pressure situation that would require split second decisions to be made.

84.　At all relevant times, Defendant Chief Valenciano and/or Defendant Officer Lopez were required to obey the laws of the United States.

85.　At all relevant times, Plaintiff had a clearly established right to be free from excessive force of this nature.

86.　At all relevant times Defendant Chief Valenciano and/or Defendant Officer Lopez intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently used excessive force on Plaintiff.

87.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

### COUNT VI
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Failure to Intervene)

88.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

89.     At all relevant times Defendant Chief Valenciano and Defendant Officer Lopez were acting under the color of state law.

90.     Defendant Chief Valenciano and Defendant Officer Lopez observed excessive force and other constitutional violations being committed by their counterpart.

91.     Defendant Chief Valenciano and Defendant Officer Lopez had the opportunity and the means to prevent harm from occurring.

92.     Defendant Chief Valenciano and Defendant Officer Lopez stood by and let the harm unfold. Defendant Valenciano and Defendant Officer Lopez had ample opportunity and time to intervene.

93.     At all relevant times, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

94.     At all relevant times, Defendant Chief Valenciano and Defendant Officer Lopez intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed one another to use excessive force against Plaintiff and otherwise violate Plaintiff's constitutional and statutory rights.

95.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Fourteenth Amendment – Failure to Provide Medical Care)

96.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs. At all times relevant herein, Defendants were acting under color of State law.

97.     The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to an individual injured in their custody.

98.     As discussed herein, Plaintiff physically injured by the unreasonable force used by Defendant Chief Valenciano and/or Defendant Officer Lopez.

99.     Instead of promptly providing medical attention, Defendant Chief Valenciano treated Plaintiff's body as a rag doll – twisting and contorting Plaintiff's limp body as he pleases.

100.    Despite Plaintiff's plead for immediate medical attention, Defendant Chief Valenciano and Defendant Officer Lopez intentionally delayed, denied, and interfered with medical treatment when Plaintiff was obviously physically injured by failing to request medical attention within a reasonable amount of time.

101.    Defendant Chief Valenciano and Defendant Officer Lopez's acts and omissions demonstrate deliberate indifference to Plaintiff's serous medical needs in violation of the Fourth and Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983.

102.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation,

and embarrassment.

## COUNT VIII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Municipal Liability – Unlawful Policy/Failure to Train)

103.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs. At all times relevant herein, Defendants were acting under color of State law.

104.     A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the municipality's policies and customs.

105.     The actions of Defendant Chief Valenciano, Defendant Officer Lopez, and the Defendant City, demonstrate a policy, practice, or custom to retaliate and use excessive force against Plaintiff, and others similarly situated, for engaging in their protected First Amendment activity.  Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiff of his right to be free from retaliation for protected conduct and right to be free from excessive force.

106.     The City Council for Defendant City is the final Policy maker for Defendant City on the retention of Defendant Chief Valenciano and continuously affirm or ratify Defendant Chief Valenciano's illegal conduct.

107.     Defendant Valenciano was a policy maker for the Olmos Park Police Department. He signed and approved policies.  He developed practices, policies and custom.  He made Defendant City aware of his actions in developing practices, policies, and custom, and Defendant City affirmed and ratified Defendant Valenciano's role as a policy maker for the police department.

108.     Defendant Valenciano continuously updated Defendant City on his understanding of whether law abiding citizens were engaged in disorderly conduct by simply carrying a weapon.

He updated the City on when a demonstration or protest occurred.  He developed the plan and policy for handling these demonstrations and protests.

109.    Defendant Valenciano continuously updated Defendant City on arrests made against constitutional activists, and what charges were being asserted.

110.    Defendant Valenciano developed a plan to "quash the rebel."  He developed a practice, custom, and policy for deterring law abiding citizens from peacefully protesting within Olmos Park.  This practice, custom, and policy was developed for the sole purpose of retaliating against those held different viewpoints on whether a law abiding citizen could open carry a firearm.

111.    Defendant City was aware of Defendant Valenciano's plan to "quash the rebel" and to deter, and retaliate against, Plaintiff.

112.    Defendant City either ratified Defendant Valenciano as the policy maker, or Defendant City adopted Defendant Valenciano's practice, custom, and policy as its own.

113.    Defendant City acted with deliberate indifference to the constitutional rights of Plaintiff in its continue reaffirmance of Defendant Chief Valenciano's unconstitutional and illegal acts.

114.    Despite multiple questionable and unlawful arrests over the years, Defendant City still permits Olmos Park Police Department to retaliate against law abiding citizens that peacefully protest Olmos Park.

115.    When complaints are raised to Olmos Park, the City works in concert with Defendant Valenciano to address the complaints.  The complaint process is informal.  There are not any written findings or reports.  Defendant City appoints Valenciano to address the complaint, and Defendant Valenciano does so by ordering and directing his officers to violate the constitutional rights of law abiding citizens.  He then reports back to the City that he accomplished

what was asked of him.

116.    Defendant City had full knowledge of Defendant Valenciano's conduct over the years, and since it did nothing to stop or correct it, purposefully condoned this conduct or acted with deliberate indifference.

117.    Defendant City's failure (or unwillingness) to act emboldened Defendant Valenciano and his officers to continue violating constitutional rights of law-abiding citizens.

118.    At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and/or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure:

    a.    To adequately supervise and train its officers and agents, including the individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police chief and police officer;

    b.    To properly and adequately monitor and discipline its officers, including the individual Defendants; and

    c.    To adequately and properly investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants each of the Plaintiff's constitutional rights have been violated.

119.    This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of Plaintiff and is directly responsible for the Defendants acting the way they did as outlined in this complaint.

120.    Further the de facto unwritten policy, procedure, or custom, described herein, including arresting and using excessive force on individuals who engage in protected conduct for false reasons, demonstrates deliberate indifference to the constitutional rights of Plaintiff and is directly responsible for the individual Defendants acting the way they did as outlined in this complaint.

121.    Defendant City's supervision of the individual Defendants, was deficient as it to relates to excessive force, unlawful arrests, inadequate training, and failure of oversight. Defendant City made a deliberately indifferent choice to not provide adequate supervision of its Chief or the individual officer, and other officers similarly situated, to ensure that such actions are not repeated, and that is exactly why the individual Defendants and other officers similarly situated, were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein.

122.    Defendant City failed to properly train the individual Defendants in the constitutional rights of law-abiding citizens.

123.    This unlawful policy or custom and failure to train was the moving force behind Plaintiff's injuries.

124.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT XI
## DECLARATORY RELIEF

125.    Plaintiff reallege the material facts alleged in the preceding paragraphs against Defendants. Defendants deprived Plaintiff of his federal constitutional rights to freedom of expression without the fear of retaliation, causing irreparable harm to Plaintiff. Through continued application and enforcement of their policies, practices, and custom, written or unwritten, that seek

to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice, Defendants threaten further violations of these same rights. Plaintiff is thus entitled to a declaration pursuant to 28 U.S.C. §2201 that his rights arising under the Constitution have been violated by the actions of the Defendants and their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice—are facially unconstitutional and unconstitutional as applied to the activities of Plaintiff.

## COUNT X
## INJUNCTIVE RELIEF

126.    Plaintiff realleges the material facts alleged in the preceding paragraphs against Defendants. Plaintiff continues to be deprived of his federal constitutional rights under the First Amendment, causing him irreparable harm and threatening additional, immediately impending irreparable injuries. Defendants, in an ongoing manner, violate Plaintiff's Constitutional rights by maintaining their policies, practices, and custom of collecting, retaining, and surveilling Plaintiff and individuals who lawfully exercise their First Amendment rights, and then portraying this information with other law enforcement agencies to cause harm to Plaintiff and attempt to deter Plaintiff from engaging in constitutionally protected activities, which is in violation of 42 U.S.C. § 1983.

127.    Plaintiff is thus entitled to an injunction preventing Defendants from further enforcement of their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful or other legitimate purpose or practice that is only sought to deter constitutionally protected activities. Defendants should be enjoined from using their policies, practices, and custom, written or unwritten, surveil Plaintiff, collect personal information on Plaintiff, or retain personal information of Plaintiff, if he is not committing any crime and otherwise following all ordinances, statutes, and law.

## ATTORNEY'S FEES AND COSTS

128.    It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Plaintiffs seek the recovery of attorneys' fees incurred in the pursuit of this action pursuant to 42 U.S.C. §1988(b) and expert fees pursuant to 42 U.S.C. §1988(c). Plaintiffs also seek recovery of their expenses and costs of court pursuant to 28 U.S.C. §1920.

129.    As a direct and proximate result of the Defendants' conduct, Plaintiff suffered damages for violations of the First, Fourth, and Fourteenth Amendments including retaliation for petitioning the government for the redress of grievances.

## JURY DEMAND

130.    Plaintiff hereby demands a trial by jury of all triable issues, per FED. R. CIV. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jack Miller, demands judgment and pray for the following relief, against Defendants, either individually or jointly, and severally:

a.   A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice, and then share this information with others, is in retaliation for exercising their Constitutional rights, violate the First Amendment to the United States Constitution;

b.   Injunctive relief barring Defendants conduct and from maintaining their policies, practices, and custom of collecting, retaining, and surveilling Plaintiff and individuals who lawfully exercise their First Amendment rights, and then sharing this information without any lawful or legitimate purpose, which is in violation of

42 U.S.C. § 1983;

c.  Full and fair compensatory damages in an amount to be determined by a jury;

d.  Nominal Damages for retaliation by Defendants for Plaintiff's exercise of his First Amendment rights of free expression and petitioning for the redress of grievances, as the Court finds appropriate, from one or more Defendants;

e.  Punitive damages from one or more Defendants to be determined by a jury;

f.  Pre-judgment and post-judgment interest from one or more Defendants;

g.  Reasonable attorney's fees and costs of this action; and

h.  Any such other relief as appears just and proper.

Respectfully Submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@g2.law
**AUSTIN M. REYNA**
Texas State Bar No. 24118645
austin@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
**COUNSEL FOR PLAINTIFF**