**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JACK MILLER | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | NO:   SA:22-CV-00088-DAE |
| | § | |
| RENE VALENCIANO, | § | |
| JAMES LOPEZ | § | |
| AND THE CITY OF OLMOS PARK | § | |
| | § | |
| **Defendants,** | § | |
| | § | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT COURT:

DEFENDANTS CITY OF OLMOS PARK ("City"); Chief of Olmos Park Police Department Chief RENE VALENCIANO ("Valenciano"); and Former City police officer JAMES LOPEZ ("Lopez") (collectively referred to herein as "Defendants") file this Motion to Dismiss in response to Plaintiff's Original Complaint **[Dkt. 1]** as authorized by the Federal Rules of Civil Procedure 12(b)(1) and (6). Defendants respectfully submit the following:

**I.
PROCEDURAL HISTORY**

1.     On February 1, 2022, Plaintiff filed an Original Complaint and Demand for Jury Trial, alleging Defendants violated Plaintiff's rights under 42 U.S.C.A. §1983 under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution **[Dkt 1].**

## II.
## NATURE OF THE LAWSUIT/FACTUAL ALLEGATIONS

2.      The instant case is a civil action for money damages brought pursuant to 42 U.S.C. § 1983, regarding an incident which occurred on February 6, 2020 ("incident") asserting First Amendment Retaliation (Protected Conduct, Surveillance Dossier, and Retaliatory Prosecution);   Fourth Amendment (Unlawful Detention/False Arrest/Unlawful Seizure, and Excessive Force); Failure to Intervein; Fourteenth Amendment, (Failure to Provide Medical Care); Municipal Liability (Unlawful Policy/Failure to Train); and Declaratory Relief and Injunctive Relief.   **[Dkt. 1].**

## III.
## ARGUMENTS AND AUTHORITIES

### A.  Standing under 12(b)(1)

4.      A 12(b)(1) motion addresses whether plaintiff has a right to be in the district court at all and whether the court has the power to hear and dispose of a plaintiff's claim.   FED R. CIV. P 12(b)(1).   The 12(b)(1) motion addresses whether plaintiff has stated a cognizable claim and it is a challenge to the sufficiency of the complaint.   *Holloway v. Pagan River Dockside Seafood, Inc.,* 669 F.3d 448, 452 (4th Cir. 2012).   Lack of subject matter jurisdiction is an affirmative defense that a defendant may assert in a motion to dismiss.   Where subject matter jurisdiction is challenged pursuant to FRCP 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.   *Michigan S. R.R. v. Branch & St. Joseph Cty. Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir. 2002).   Specifically, the plaintiff must show that the complaint alleges a claim under federal law, and that the claim is "substantial."   *Id.*   In the instant case, Plaintiff cannot sustain a deprivation of a constitutional or other federally protected right as a result of some official policy, practice or custom of either the City of Olmos Park or the City of Kirby.

**B.      Standard for 12(b)(6) Motion**

5.      If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law.   FED R. CIV. P 12(b)(6).   To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 44, 556 (2007)).   A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (quoting *Twombly,* 550 U.S. at 556).   The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*   Rather, the court must be sure that the complaint alleges sufficient facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss under Rule 12(b)(6) the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007) (quoting *In re Katerina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

6.      Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.   *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp.2d 734, 737-38 (S.D. Tex. 1998).   While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.   Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.   *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993); see also

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). As explained herein, Plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id; Nationwide BiWeekly Admin. Inc. v. Belo Corp.,* 512 F.3d 137, 140 (5th Cir. 2007).

7.      When ruling on a rule 12 (b)(6) motion, courts generally examine only the contents of the pleadings and any attachments thereto.   *Brand Coupon Network, LLC v. Catalina Mkting Corp.,* 748 F.3d 631, 635 (5th Cir. 2014).   However, they may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.*

8.      The Court can determine whether Plaintiff has alleged a violation of a constitutional right. *Hale v. Townley,* 45 F.2d 914, 917 (5th Cir. 1995).   In the instant case, Plaintiff's conclusory claims on unidentified policies do not meet the requisite standard to impose constitutional liability.

9.      Plaintiff requests a Declaratory Judgment that Olmos Park's policies, practices, and customs are unconstitutional.   Plaintiff's conclusory claims on unidentified policies do not meet the requisite standard to impose constitutional liability. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Fernandez–Montes* at 284; *Great Plains Trust Co.* at 313.

**IV.**
**THE YOUNGER ABSTENTION APPLIES**

10.      The Supreme Court held in *Younger v. Harris* that, when a party in federal court is simultaneously defending a state criminal prosecution, federal courts "should not act to restrain [the state] criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."   401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).   Its conclusion was motivated by the "basic doctrine of equity

jurisprudence," "notion[s] of 'comity,'" and "Our Federalism." *Id.*   Courts apply a three-part test when deciding whether to abstain under *Younger*.   There must be (1) "an ongoing state judicial proceeding" (2) that "implicate[s] important state interests" and (3) offers "adequate opportunity" to "raise constitutional challenges." *O'Donnell v. Harris County et al.* 892 F. 3d 147, 156 (5th Cir. June 1, 2018), citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).   The *Younger* doctrine also applies to suits for injunctive and declaratory relief. *Google, Inc., v. Hood*, 822 F. 3d 212, 222 (5th Cir. 2016) citing *Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d 82, 86 (5th Cir. 1992).

11.     Of the offenses charged against Plaintiff, the charge of resisting arrest is still active and is awaiting trial or trial reset on April 25, 2022. *Jack Miller v. State of Texas,* No. 633088, County Court No. 6, Bexar County, Texas.   (See attached **Exhibit "A,"** Bexar County Clerk Court Records Search).

**A.     Ongoing State Judicial Proceedings That Implicate Important State Interests**

12.     Considering the second *Younger* requirement, "[w]hen a state proceeding is commenced before the federal suit is filed or before the federal court takes any substantive action in the case…the balance weighs in favor of the state: the risk of federal interference is greater, and the state interest is stronger." *DeSpain v. Johnson*, 731 F.2d 1171, 1178 (5th Cir. Tex. 1984).   On the date of the incident, Plaintiff was arrested, and his property seized.

13.      As the Supreme Court has explained, interference with state judicial proceedings "prevents the state ... from effectuating its substantive policies.... results in duplicative legal proceedings and can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Google,* at 222, citing *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (quoting *Steffel v. Thompson,* 415 U.S. 452, 462,

94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).  To proceed with the state criminal action first, demonstrates an important state interest in prosecuting criminal violations.

**B.      Plaintiff has an adequate opportunity to raise any constitutional challenges in the state criminal court proceedings.**

14.     The third prong for *Younger* applicability is whether the state proceeding affords an adequate opportunity to raise constitutional challenges to the actions enjoined as specified in Plaintiff's Original Complaint.    *Wightman v. Tex. Supreme Ct.,* 84 F.3d 188, 189 (5th Cir. 1996). Plaintiff has adequate opportunity to raise constitutional challenges in the state court criminal proceedings.   The availability of the opportunities to litigate constitutional claims in the state courts (trial and appellate) constitute "an adequate opportunity to raise constitutional challenges" in the state criminal proceedings.   This prong of the *Younger* test is satisfied in the instant case and abstention is warranted.

**C.      Plaintiff's Injunction Request is Overbroad.**

15.     "When crafting an injunction, district courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'" *O'Donnell* at 163*,* citing *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). "A district court abuses its discretion if it does not '**narrowly** tailor an injunction to remedy the specific action which gives rise to the order.'" *O'Donnell* at 163, citing *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (Emphasis added).   "Thus, an injunction must be vacated if it "fails to meet these standards" and "is overbroad."   *Id.*   "The broadness of an injunction refers to the range of proscribed activity .... [and] is a matter of substantive law."   *O'Donnell* at 163, citing *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.19 (5th Cir. 1975). The Fifth Circuit found that there was a significant mismatch between the district court's procedure-focused legal analysis and the sweeping injunction it implemented.   *Id.*

16.     Plaintiff requests that Defendants be enjoined, "from, further enforcement of their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful or other legitimate purpose or practice that is only sought to deter constitutionally protected activities." **[Dkt. 1, ¶127]** In addition, Plaintiff seeks to enjoin Defendants from, "using their policies, practices, and custom, written or unwritten, surveil Plaintiff, collect personal information on Plaintiff, or retain personal information of Plaintiff, if he is not committing any crime and otherwise following all ordinances, statutes, and law." **[*Id*].** First, Plaintiff cannot assert nor recover damages for constitutional violations to third parties, because constitutional claims are personal and cannot be asserted vicariously. *Johns v. County of San Diego*, 114 F. 3d 874 (9th Cir. 1997).   As a matter of law, Plaintiff does not have standing to vicariously assert constitutional claim violations against Defendants on behalf of "law-abiding citizens."   Further, the requested injunctive relief is overly broad because it does not specify what polices, practices or customs Defendants are enjoined from enforcing.   As read, the injunctive relief requested could include all City ordinances that could involve or relate to any person's civil rights.

**D.     This Court Lacks Jurisdiction Over the Property at Issue**

17.     This Court lacks jurisdiction to hear disputes over property in custody of the state district court in the county where the property was seized – the state court has exclusive jurisdiction over the *res.*[1] **[Dkt. 1, ¶¶35, 76].**   Under Chapter 59 of the Texas Code of Criminal Procedure, jurisdiction, as here, vests with the Bexar County District Court upon the seizure of the property

---

1 *Reyna v. United States,* 180 Fed. Appx. 495, 496 (5th Cir. Tex. 2006) (unpub.) (The federal district court lacks jurisdiction over property where the property has never been in federal custody and has not been subject to federal forfeiture), relying on *Scarabin v. Drug Enforcement Admin.*, 966 F.2d 989, 994 (5th Cir. 1992).

in the county.[2]   There are no stated facts in Plaintiff's Original Complaint that Plaintiff's property

has been transferred from the state to the custody of a federal agency.   This Court has no control

over the property and thus, lacks jurisdiction over the property at issue in the instant case.

18.     The *Younger* abstention applies in this case because (1) this Court lacks the jurisdiction

over the property at issue, since the state court has exclusive jurisdiction over the *res*; (2) the

property seized is for the purpose of state criminal proceedings; (3) the *Younger* abstention applies

and Plaintiff can raise his constitutional challenges in state court; and (4) the injunctive relief

requested is overbroad and should be denied. In the alternative, the instant cause should be abated

until Plaintiff's criminal case is resolved.

## PLAINTIFF FAILED TO STATE A 42 U.S.C. § 1983 CLAIM AGAINST INDIVIDUAL DEFENDANTS UPON WHICH RELIEF CAN BE GRANTED, THEREFORE VALENCIANO AND LOPEZ RETAIN THEIR QUALIFIED IMMUNITY.

19.     Valenciano and Lopez invoke their qualified immunity from Plaintiff's claims.   Qualified

immunity protects public officers from suit if their conduct does not violate any "clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Bishop v. Arcuri,* 674 F.3d 456, 460 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).   Once the qualified immunity defense is raised, the

Plaintiff possesses the burden of showing that the facts alleged demonstrate that the officer violated

a <u>constitutional right</u>, and that the right <u>was clearly established</u> at the time of the violation.

*Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (discussing the

modified inquiry under *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272

2  Tex. Code Crim. Proc. 59.01(8): "Seizure" means the restraint of property by a peace officer under Article 59.03(a) or (b) of this code, whether the officer restrains the property by physical force or by a display of the officer's authority and includes the collection of property or the act of taking possession of property.   In addition, Tex. Code Crim. Proc. 59.01(c) states: (c) A peace officer who seizes property under this chapter has custody of the property, subject only to replevy under Article 59.02 of this code or an order of a court.

(2001)); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

20.     "When properly applied, it [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, ---, 131 S. Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011).   This is a fact-specific inquiry to be made from the perspective of an objectively reasonable officer at the scene, rather than in hindsight. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).

**A.     No Constitutional Violation by Valenciano and Lopez**

21.     In reviewing defendants' claim of qualified immunity, the court must first ascertain whether Plaintiff has sufficiently asserted the violation of a constitutional right. *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir. 1999).   Plaintiff fails to state a cognizable claim against Individual Defendants under the First, Fourth and Fourteenth Amendments. Plaintiff admits that he is a "constitutional rights activist" who commonly exercises his rights.   **[Dkt. 1, ¶5].**   Plaintiff generally asserts an unasserted conspiracy claim that Individual Defendants (also presumably the City) consciously target Plaintiff for unlawful detention, arrest, and to falsely charge him for crimes Defendants knew Plaintiff did not commit. (stated differently, Individual Defendants planned to arrest Plaintiff before there were facts upon which one could base a probable cause determination in the instant case).   **[*Id*].**   Concerning Plaintiff's First Amendment retaliation claim, Plaintiff asserts that Individual Defendants retaliated against Plaintiff for engaging in protected conduct. "Plaintiffs suing governmental officials in their individual capacities must allege **specific conduct** giving rise to the constitutional violation." *Id.* (Emphasis added).   In order to survive, those actions [individual capacities] "must be pleaded with '**factual detail and particularity**,' not mere conclusionary allegations." *Id,* citing *Jackson v. Widnall,* 99 F.3d 710, 715–16 (5th Cir.1996) (Emphasis added).

22.     Plaintiff only alleges conclusory First Amendment allegations against Individual Defendants.   Plaintiff is not specific on what type of "protected conduct" led to his arrest. Plaintiff asserts that Valenciano's collection of information on Plaintiff for law enforcement investigative purposes and subsequent prosecution is an unlawful or an unconstitutional act resulting in retaliation against Plaintiff's First Amendment right. **[Dkt. 1, ¶56].** Nothing specifically for Lopez.   Plaintiff also asserts conclusory allegations concerning Plaintiff's Fourth Amendment constitutional violations against Individual Defendants.   Qualified immunity protects Individual Defendants against the allegation that they caused Plaintiff to be arrested unreasonably.  *Malley v. Briggs,* 475 U.S. 335, 344 (1986).   Plaintiff premises the following allegations under the Fourth Amendment as actions that are "unreasonable" and/or actions that "unreasonably" caused:   use of force, seizure of property, and retaliation against Plaintiff.   **[Dkt. ¶¶ 33, 45, 60, 76, 80, 82, 86, 94, 98].**   In addition, to the extent Plaintiff is asserting Fourth Amendment claims on behalf of any third parties ("law-abiding citizens") those claims should be dismissed.   "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."  *Alderman v. United States*, 394 U.S. 165, 174 (1969). As such, Individual Defendants retain their qualified immunity from suit against Plaintiff's constitutional violations claims against Individual Defendants.

**B.     In the Alternative, Plaintiff Has Not Sufficiently Plead That Individual Defendants Violated a Clearly Established Law.**

23.     Plaintiff fails to plead what clearly established law Individual Defendants violated that resulted in unconstitutional acts against Plaintiff.   Regarding Plaintiff's First Amendment violation complaints, Plaintiff has not plead how Valenciano's collection of information on Plaintiff for law enforcement investigative purposes and subsequent prosecution is an unlawful or unconstitutional act resulting in retaliation against Plaintiff's First Amendment rights. **[Dkt. 1,**

**¶56].**   Plaintiff is not asserting that he was denied his constitutional right to film police.   As to all of Plaintiff's constitutional violation claims, Plaintiff makes no attempt to show the "clearly established" law at an appropriate level of specificity required to overcome the Individual Defendants' qualified immunity.   Plaintiff relies instead on the broadest proposition of law.

## V.
## PLAINTIFF CANNOT PROVIDE SUFFICIENT EVIDENCE OF A POLICY, PRACTICE OR CUSTOM

24.     To recover a judgment against a city under Section 1983, a plaintiff must ***allege*** and establish that he sustained a deprivation of a constitutional or other federally protected right as a result of some official policy, practice or custom of the governmental entity.   *Monell v. Department of Social Services,* 436 U.S. 658, 691-94 (1978).   Plaintiff asserts in his Original Complaint that the City's unlawful policy, practice or customs and failure to train its police officers were the direct and proximate cause of Plaintiff's damages and injuries, which resulted in the constitutional violations against Plaintiff.   Plaintiff also asserts that the City ratified Valenciano's actions, and that Valenciano was a policy maker for the City **[Dkt. 1, ¶¶ 104-118]**.

25.     In order for a municipality to be ***liable*** for its policies, practices, or customs, Plaintiff must sufficiently plead that "either (1) that a policy *itself* violated federal law or authorized or directed the deprivation of federal rights or (2) that a policy was adopted or maintained by the municipality's policymakers with 'deliberate indifference' as to its known or obvious consequences...a showing of simple or even heightened negligence will not suffice.'"   *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).   In a §1983 suit against a city, the claim must be based upon the implementation or execution of a policy or custom which was <u>officially</u> adopted by the City.   *Monell* holds that a governmental entity can be found liable under Section 1983 <u>only</u> if the entity itself causes the constitutional violation at issue.   *Monell,*

436 U.S. at 690-91.   Thus, Plaintiffs must allege with **specificity** and **particularity** that their claims are based on the City's official policy, **not** the policy of an individual official or officer. *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984).

26.    Plaintiff does <u>not</u> plead that the implementation or execution of a policy was <u>officially</u> adopted by the City.   Plaintiff generally alleges in his Original Complaint that the City's policies, practices and/or customs failed to: (1) adequately supervise and train their officers by, "failing to adequately discourage further constitutional violations on the part of its officers"; (2) "properly and adequately monitor and discipline it officers, including individual Defendants"; and (3) "adequately and properly investigate citizen complaints of police misconduct. . . ." and that Defendants, "acted with deliberate indifference to the constitutional rights of the Plaintiffs." **[Dkt. 1, ¶118].**   Plaintiff further generally asserts that the City is, "directly responsible for the individual Defendants acting the way they did as outlined in this lawsuit."   **[Dkt. 1, ¶119].** Plaintiff makes the conclusory allegation that the City's unwritten policies demonstrates deliberate indifference to the constitutional rights of the Plaintiff.   **[Dkt. 1, ¶120].**

27.    Plaintiff's general and conclusory allegations are not sufficient to overcome Defendants' Motion to Dismiss.   Plaintiff must plead <u>specific</u> facts that their alleged injury resulted from a permanent and well-settled practice or custom of the City.   *Fraire v. City of Arlington,* 957 F2d 1268, 1278 (5th Cir. 1992).   In *Spiller v. City of Tx. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997), the arrestee alleged the officer who effected arrest without probable cause "was acting in compliance with the municipality's customs, practices, or procedures. The Fifth Circuit held that an arrestee's conclusory allegations were insufficient to allege municipal liability under §1983.   *Id.* at 164.

**A.    Plaintiff has not plead that the alleged policy was adopted or maintained by the municipality's policymakers.**

28.     Plaintiff must sufficiently plead that the alleged policy or custom was adopted or maintained by the municipality's policymakers who have either actual or constructive knowledge of the alleged policy, practice, or custom.   *Brown*, 520 U.S. at 410; *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("Actual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."); *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984).   Plaintiff has not alleged that a policymaker for Defendants, having policy making authority, had actual or constructive knowledge of an alleged unconstitutional policy, practice or custom and acted with 'deliberate indifference' as to its known or obvious consequences. Plaintiff does not assert or identify what policies the City, on its own, adopted.   Plaintiff just generally asserts that the City adopted Valenciano's practice, custom, or policy as its own, but does not attribute a policy created or maintained by the City.[3]   **[Dkt. 1 ¶112].**

B.      **Valenciano is not a policymaker for the City of Olmos Park**.

29.     Plaintiff's flawed contention which forms the basis of his alleged *Monell* liability is based on a third degree of separation.   First, the City Council is the City's final policymaker. Second, the City retained Valenciano as the City's Chief of Police.   Third, since the City hired Valenciano, the City automatically and continuously affirms or ratifies Valenciano's actions.   **[Dkt. 1, ¶106]**. As a consequence, the City Council is the final policymaker who created the alleged unconstitutional policies, practices and customs Plaintiff alleges in his Original Complaint.

30.     However, Valenciano is <u>not</u> a policymaker or a final policymaker for the City of Olmos Park.   Unconstitutional policy is attributable to the governing body of a city where the policy was

---

3 Contrary to the holding in *Bennett v. City of Slidell* at 769 (5th Cir.1984), that claims are based on the City's official policy, **not** the policy of an individual official or officer.

made by an official to whom the governing body gave policymaking authority.   *Flanagan v. City of Dallas*, Texas, 48 F. Supp. 3d 941, 948 (N.D. Tex., Sept 23, 2014) citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir.1984) (*en banc*).   The Fifth Circuit "has long distinguished between final decision-making authority and final policymaking authority." *Valle v. City of Hous.,* 613 F.3d 536, 542 (5th Cir.2010). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."   *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).   Attached as **Exhibit "B"** is an Affidavit of the City Manager of the City of Olmos Park, Celia DeLeon,[4] demonstrating that Police Chief Valenciano is not a final policy maker for the City, but is an appointed City employee who must seek approval of any recommended policy matters for his department through the City Manager and City Council.   Attached to Ms. De Leon's affidavit is **Attachment #1,** City Ordinance Sec. 22-1, establishing that the Chief of Police is appointed by and serves as the pleasure of the City Manager subject to the approval of the City Council, the police department is subject to the City's administrative policies in Chapter 2 of the Code of Ordinances, and that appointment of patrolmen are subject to the approval of the City Manager; **Attachment #2**, City Ordinance Sec. 2-2., establishing the powers and duties of the City Manager and providing in Subsection (e) (2) that the City Manager shall exercise supervision and control over all departments now created or to be created by the City Council unless otherwise provided; **Attachment #3,** City Ordinance Sec. 2-7., establishing that the City Manager, with the approval of City Council, may change or amend the administrative rules in Chapter 2 in order to

---

4  Affidavit and attachments utilized in a previous case of *Joanna Castro v. City of Olmos Park, Renee Valenciano and Albert Salinas,* In the United States District Court for the Western District of Texas, San Antonio Division, No. 5:18-CV-00312-DAE. [Dkt. 30-1].

promote the interest of the City; and **Attachment #4**, City of Olmos Park organizational chart displaying Police Chief Valenciano's position under and subordinate to the City Manager and City Council. It is proper in deciding a 12 (b)(6) motion to take judicial notice of matters of public record. *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir. 2007).  Defendant requests that the Court take judicial notice of the City of Olmos Park Ordinances and organizational chart which are public record and attached to Ms. DeLeon's affidavit.

31.     As demonstrated by the affidavit of the City Manager and supporting attachments, Plaintiff's allegation that Police Chief Valenciano is the final policymaker for the Olmos Park Police Department is insufficient to support Plaintiff's allegation of municipal liability.  In a similar case, the City of Olmos Park's Ordinances and the City of Dallas' Charter are analogous in not bestowing policymaking authority on its Police Chief.   In *Moreno v. City of Dallas*, 2015 WL 3890467 (N.D. Tex., June 18, 2015) the court held that, "as a matter of law, the Dallas City Charter does not characterize the Chief of Police as the final policy maker for purposes of Section 1983 liability, as his actions are subject to review by the City Manager, who is in turn supervised by the City Council," *Id.* at *5 citing *Mosser v. Haney*, No 3:03-CV-2260-B, 2005 WL 1421440, *4 (N.D. Tex. June 17, 2005) ("([T]he Chief of Police is not the policymaker for Dallas's police department, as he remains subject to the rules and supervision of the City Manager").  Plaintiff has neglected to provide factual assertions sufficient to create a reasonable inference that the Chief of Police has been delegated certain authority. Due to Plaintiff's absence of clear factual assertions indicating the delegation of authority to Chief Valenciano, Plaintiff's Original Complaint is deficient in asserting that Chief Valenciano is the final policymaker for the Olmos Park Police Department.    The only issue presented by Plaintiff is that the Olmos Park Chief of Police Valenciano is a final policy maker, which City Manager De Leon's affidavit with supporting

City's Ordinances and case law establishes that he is not. Since Plaintiff cannot identify a City policymaker, Plaintiff's claims do not satisfy *Monell* standards and therefore, the City should be dismissed from this case

32.     Further, Plaintiff's allegation that Police Chief Valenciano is the policymaker is insufficient because Plaintiff is required to plead that Valenciano is a "final" policy maker for the City.   The Fifth Circuit has emphasized that without all of the requisite elements for a *Monell* claim to establish liability, "where a court fails to adhere to the rigorous requirements of culpability (by policymakers) and causation, municipal liability collapses into *respondeat superior* liability." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of County Comm. of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997). (reference to policymakers added); *see also, City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989).   Plaintiff's allegations stem from the alleged actions of Chief Valenciano and not any overt actions by a City's final policymaker.   As such, the City should be dismissed.

**C.      Plaintiff fails to state a claim for failure to train or supervise.**

33.     To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.   *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).   Plaintiff has failed to state a claim for failure to train or supervise. "In order for liability to attach based on an inadequate training claim, a plaintiff must **allege with specificity** how a particular training program is defective."   *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotation marks omitted) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)) (Emphasis added).

34.     Plaintiff makes no allegations regarding a particular training program at issue, particular inadequacies in Defendant officers' training, or in their specific involvement in the training. Because of this, Plaintiff fails to adequately state a claim for relief as to the first element of a failure to train claim.   *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017) (plaintiff "… fails to identify any specific inadequacies in [the city's] training materials or procedures which give rise to his claim"); *Bryan v. City of Dallas*, 188 F.Supp.3d 611, 621 (N.D. Tex. 2016) (dismissing a failure-to-train claim under Rule 12(b)(6) because the plaintiffs "neither identified a particular training program nor specified how such a program is deficient") *as cited by Pierre v. Oginni*, No. 3:17-CV-0259, 2018 WL, 4220848, at *3 (S.D. Tex. Sept. 5, 2018).

35.     Plaintiff makes conclusory allegations that the City's supervision of its officers was deficient as it relates to excessive force, unlawful arrests, and unlawful searches and seizures, but do not plead that the deficient supervision reflects a 'deliberate' or 'conscious' choice by a municipality."   *World Wide* at 756 (quoting *City of Canton*, 489 U.S. at 389) (internal quotation marks omitted).

36.     "In order to survive a motion to dismiss, a complaint must contain not only legal conclusions, but sufficient factual allegations to state a claim for relief that is 'plausible on its face'." *Pierre v. Oginni*, No. 3:17-CV-0259, 2018 WL 4220848, at *4 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "… [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient.   *Id*.   Plaintiff pleads the following conclusory allegations:

> "Despite multiple questionable and unlawful arrests over the years, Defendant City still permits Olmos Park Police Department to retaliate against law abiding citizens that peacefully protest Olmos Park." **[Dkt. 1, ¶114].**

> "At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and/or customs developed,

implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure":

    a.   "To adequately supervise and train its officers[5] . . .including individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police chief and police officer";

    b.   "To properly and adequately monitor and discipline its officers, including individual Defendants";

    c.   "To adequately and properly investigate citizen complaints of police misconduct . . ." ". . .acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiff."

**[Dkt. 1, 118].**

As in the instant case, Plaintiff alleges no specific facts about a particular training program, its procedures, or alleged deficiency that caused Valenciano's and Lopez's behavior or any other supporting facts; therefore, Plaintiff's claims do not survive a motion to dismiss.   *Id*.

**VI.**
**PLAINTIFF PROVIDES ONLY CONCLUSORY ALLEGATIONS OF DELIBERATE INDIFFERENCE.**

37.    Deliberate indifference is alleged with facts that show the "municipal actor disregarded a known or obvious consequence of his action."   *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).   "To demonstrate deliberate indifference, a plaintiff must show that 'in light of the duties assigned to specific officers or employees, need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). In this case, Plaintiff offers only conclusory allegations:

"This failure to supervise, discipline, or control its officers demonstrates deliberate

---

5 Plaintiff also includes "agents" but does not identify any other defendants.

indifference to the constitutional rights of Plaintiff and is directly responsible for the Defendants acting the way they did as outlined in this complaint."  **[Dkt. 1, ¶119].**

"Defendant City's supervision of the individual Defendants was deficient as it to relates to excessive force, unlawful arrests, inadequate training, and failure of oversight. Defendant City made a deliberately indifferent choice to not provide adequate supervision of its Chief or the individual officer, and other officers similarly situated, to ensure that such actions are not repeated, and that is exactly why the individual Defendants and other officers similarly situated, were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein."  **[Dkt. 1, ¶121]**.

## II.
## NO FOURTEENTH AMENDMENT VIOLATION FOR FAILURE TO INTERVENE AND FAILURE TO RENDER MEDICAL ATTENTION

38.    Plaintiff's contention that Defendants denied Plaintiff medical treatment is without merit. In order to be liable for a violation of a detainee's clearly established constitutional right to medical care, the official must have had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.  *Schmidt v. State of Texas*, 2009 U.S. Dist. LEXIS 126472 (S.D. Tex. Aug. 17, 2009) at p. 6 citing, *Hare v. City of Corinth, Miss.,* 74 F. 3d 633 at 650 (5th Cir. 1996) (en banc).

39.     In addition, where a cause of action is available under the specific protections of the Fourth Amendment, as in the instant case, a claim that the conduct violated the more generalized right to substantive due process is not available.  *Macias* at *15.  *Garcia* v. *City of McAllen,* 2020 WL 1660095 (5th Cir. 2020) dismissed a Fourteenth Amendment claim holding that the Supreme Court has confirmed that excessive force claims cannot be brought under the Fourteenth Amendment due process clause, and must instead be brought under the Fourth Amendment, which provides the "explicit textual source of constitutional protection" against excessive force by government actors. *Id*. at note 5, *citing, Graham v. Connor,* 490 U.S. 386, 395 (1989).

**VIII.**
**PLAINTIFF'S DECLARATORY JUDGMENT ACTION AGAINST DEFENDANTS**
**MUST BE DISMISSED.**

40.     The Declaratory Judgment Act "does not create a substantive cause of action," but "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 U.S. Dist. LEXIS 88527 (N.D. Tex. Sept. 25, 2009).   The act provides no independent basis for jurisdiction. *Medtronic Inc. v Mirowski Family Ventures L.L.C.*, 134 S.Ct. 843, 848 (2014). Plaintiff simply asks the Court to declare Defendants' policies unconstitutional as applied to Plaintiff.     However, as noted above, Plaintiff does not have personal First, Fourth or Fourteenth Amendment right violations against Defendants.   Therefore, Plaintiff does not have an underlying judicially remediable right and cannot seek declaratory relief. Accordingly, Defendants seek dismissal of Plaintiff's declaratory judgment request for relief.   **[Dkt. 1, ¶125].**

**IX.**
**CONCLUSION AND PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants pray the Court grant their Motion to Dismiss and dismiss Plaintiff's claims against Defendant City and Individual Defendants Valenciano and Lopez, pursuant to FRCP 12(b)(1) and (6). Defendants further request such other and further relief to which they may show themselves to be justly entitled, at law and in equity.

SIGNED this 11th day of April 2022.

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:     (210) 227-3243
Facsimile:     (210) 225-4481
pbernal@rampaglaw.com
aruiz@rampagelaw.com

BY:     */s/ Adolfo Ruiz*
PATRICK C. BERNAL
State Bar No. 02208750
ADOLFO RUIZ
State Bar No. 17385600
**COUNSEL FOR DEFENDANTS
CITY OF OLMOS PARK AND
RENE VALENCIANO AND JAMES LOPEZ**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Texas Rules of Civil Procedure on this 11th day of April, 2022, to the following:

Brandon Grable               **E-NOTIFICATION**
Grable Grimshaw Mora PLLC
1603 Babcock Road, Suite 280
San Antonio, Texas 78229

*/s/ Adolfo Ruiz*
PATRICK C. BERNAL
ADOLFO RUIZ

# EXHIBIT A



## COUNTY CLERK & DISTRICT CLERK
### COURT RECORDS SEARCH

Civil court case records are no longer provided in search results. To search civil data, visit the **Bexar County Portal Smart Search** (https://www.bexar.org/3414/Bexar-County-Odyssey-Portal).

# Case #633088

**Mag Case Number**: NM556677

**Name**: JACK EDWARD MILLER

**SID**: 553480

**Judicial Number**: 1953747

**Case Status Date**: 4/25/2022

**Case Status**: AWTG TRIAL

**Court** : CC6

**Location** : BND

**Fine Amount** :  0.00

**Court Costs** :  0.00

**Sentence** : 0000000000

**Disposition Date** : N/A

**Disposition Status** :

**Offense Date** : 2/6/2020

**Offense Description** : RESIST ARR-SEARCH-TRANSPORTATI

**Judgment Date** : N/A

**Judgment** :

**Attorney Name** :

**LDC** : RUSSELL, ELIZABETH A.

---

!

**Bond(s) exist for this case - Click here to view.** (/Bond/BondSummary?bp=CC633088&r=a85d9474-185f-4ce2-9ac4-edf087bc3e83&st=s&s=553480&cs=&ct=&=,,&full=y&=&)

# Case Events

| Date | Description |
|---|---|
| 4/25/2022 | JURY TRIAL RESET |
| 4/25/2022 | AWTG TRIAL |
| 3/11/2022 | EFILE ENVELOPE NBR 62526815 |
| 3/11/2022 | MOTION TO COMPEL DISCOVERY UND |
| 3/11/2022 | ER MICHAEL MORTON ACT |
| 2/25/2022 | INTAKE DA 24077690 |
| 2/16/2022 | EFILE ENVELOPE NBR 61803065 |
| 2/16/2022 | MOTION FOR DISCOVERY AND SPEEDY |
| 2/16/2022 | TRIAL |
| 2/7/2022 | SET JURY TRIAL |
| 2/7/2022 | AWTG TRIAL |
| 1/10/2022 | EFILE ENVELOPE NBR 60679829 |
| 1/10/2022 | NOTICE FOR APPLICATION TO ISSUE |
| 1/10/2022 | SUBPOENAS |
| 1/10/2022 | NOTICE FOR APPLICATION TO ISSUE |
| 1/10/2022 | SUBPOENAS |
| 12/9/2021 | EFILE ENVELOPE NBR 59884364 |
| 12/1/2021 | AWTG HEARING |
| 12/1/2021 | HEARING WAIVED |
| 11/19/2021 | EFILE ENVELOPE NBR 59326432 |
| 11/19/2021 | MOTION FOR RETURN OF PROPERTY |
| 11/19/2021 | MOTION FOR ORDER TO RETURN PROP |
| 11/19/2021 | ERTY |
| 9/20/2021 | HEARING DATE RESET |
| 9/20/2021 | AWTG HEARING |
| 9/16/2021 | FILE RECD IN COURT CC6 |
| 9/13/2021 | INTAKE DA 24092894 |
| 9/13/2021 | DA INFO TO CCF |
| 9/13/2021 | COMPLAINT REC'D CF |
| 9/13/2021 | FILE SENT TO COURT CC6 |
| 7/28/2021 | HEARING DATE RESET |
| 7/28/2021 | AWTG HEARING |
| 4/4/2021 | HEARING DATE RESET |
| 4/4/2021 | AWTG HEARING |
| 1/6/2021 | HEARING DATE RESET |
| 1/6/2021 | AWTG HEARING |
| 9/23/2020 | HEARING DATE RESET |
| 9/23/2020 | AWTG HEARING |
| 6/8/2020 | HEARING DATE SET |
| 6/8/2020 | AWTG HEARING |
| 6/4/2020 | APPT OF ATTY FLD |
| 5/28/2020 | DEF ATTORNEY APP 24096392 |
| 5/28/2020 | ATTORNEY APPOINTED V0000P0000 |
| 5/28/2020 | APPT- JUDGE REQST WAYNE CHRISTIAN |
| 5/14/2020 | INTAKE DA 24072900 |
| 3/17/2020 | ARRAIGNMENT SET |
| 3/17/2020 | ARRAIGNMENT WAIVED |
| 2/13/2020 | CC RECEIVED BOND # 1871555 |
| 2/8/2020 | Offender record se nt to VINE1953747001 |
| 2/7/2020 | CO DEFENDANT NUM CC632293 |
| 2/7/2020 | BOOKED B20200565502 |
| 2/7/2020 | BOND SET 1000.00 0000000 |

| Date | Description |
| --- | --- |
| 2/7/2020 | DEF. MAGISTRATED |
| 2/7/2020 | AWTG DKT APPEARNCE |
| 2/7/2020 | CNTY COURT ASSIGND CC6 633088 |
| 2/7/2020 | Offender record se nt to VINE1953747001 |
| 2/7/2020 | Charge record sent to VINE 1953747001 |
| 2/7/2020 | BOND MADE 1000.00 1871555 |
| 2/7/2020 | SID 0438385 B20200565502 1871555 |
| 2/7/2020 | REL'D ON BOND |
| 2/7/2020 | RELEASED FROM JAIL |
| 2/6/2020 | MA 480105 RESIST A RR-SEARCH-TRANSPORTA |
| 2/6/2020 | COMPLAINT FILED NM 556677 |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOANNA CASTRO,                    §
**PLAINTIFF**                     §
                                  §
V.                                §          CIVIL NO. 5:18-CV-00312-DAE
                                  §
ALBERT SALINAS,                   §
**DEFENDANT**                     §

---

### AFFIDAVIT OF CELIA DE LEON

---

STATE OF TEXAS          §
                        §
COUNTY OF BEXAR         §

Before me, the undersigned notary, on this day personally appeared Celia De Leon, a person whose identity is known to me. After being by me duly cautioned to tell the truth, subject to the penalties for perjury, she did affirm and testify as follows:

"My name is Celia De Leon. I am over the age of eighteen (18) years, am of sound mind, and am fully capable of making this affidavit. I am personally familiar with facts recited below, which are true and correct.

Currently, I hold the position of City Manager for the City of Ohnos Park. I have held the position of City Manager since December 2013.

The Chief of Police for the City of Olmos Park, which Rene Valenciano has held that title since July 17, 2014, is a city employee position that pursuant to the City of Olmos Park Code of Ordinances ("Code") Section 22-l(b) is appointed by the City Manager and who serves at the pleasure of the City Manager subject to the approval of the City Council. In addition, Section 22-1 (b) of the Code provides that appointments of patrohnen and other peace officers within the police department are made by the Chief of Police, but are subject to the approval of the City Manager. Attached to my affidavit as Exhibit A1 is a copy of Section 22-1 of the Code.

Among my duties as City Manager under Section 2-2 (3) of the Code, I exercise supervision and control over all departments now created or to be created by the *City* Council, which includes the Chief of Police and the police department. I am not aware of any other sections of the Code that provide otherwise.

Although the police chief is the administrative head of the police department, the police department employees are governed by the City's administrative policies set forth in Chapter 2, Section 22-1 (a),(b) of the Code. Pursuant to Section 2-7 of the Code, in my position as City Manager, with the approval of City Council, I may change or amend the City's administrative rules set forth is Chapter 2 of the Code to the extent I deem necessary in order to effectively and efficiently promote the interest of the City, subject to statutory limitations. Attached hereto to my affidavit respectively as **Exhibits A2 and A3** are copies of Sections 2-2 and 2-7 of the Code.

Police Chief Valenciano is not considered a final policy maker under the Code, because Chief Valenciano and the police department are subject to the control and supervision of the City Manager subject to the approval of City Council. The police chief's position in the City's organizational chart is below the City Manager and City Council. Attached hereto to my affidavit as **Exhibit A4** is a copy of the City's organizational chart.

In my capacity as City Manager, I serve as a Custodian of Records for the City of Olmos Park.  Of those records, attached hereto is a true and correct copy of five (5) pages of documents reflecting:

> **Exhibit A1:** Copy of Section 22-1 of the City of Olmos Park Code of Ordnances. Code.
> **Exhibit A2:**  Copy of Section 2-2 of the City of Olmos Park Code of Ordnances. Code.
> **Exhibit A3:**  Copy of Section 2-7 of the City of Olmos Park Code of Ordnances. Code.
> **Exhibit A4:**  Copy of City of Olmos Park organizational chart.

The attached documents are kept by my department in the regular course of business, and it was in the regular course of business and activity of the City of Olmos Park for an employee of City, with knowledge of the act and contains information transmitted by the person with knowledge of the matters of the event, condition, opinion, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the occurrence of the matters set forth in the documents and was made by the regularly conducted activity as a usual practice for the City.  The records attached are exact duplicates of the originals which are true and correct.

Further Affiant sayeth not.

Celia DeLeon
City Manager
City of Olmos Park, Texas

Affidavit of Celia DeLeon                                                                 Page 2 of 2

SUBSCRIBED AND SWORN TO BEFORE ME on this   day of April, 2019, to
certify which witness my hand and official seal.



DIANE M. GONZALES
MY COMMISSION EXPIRES
August 28, 2019

NOTARY PUBLIC, STATE OF TEXAS

Affidavit of Celia DeLeon

Page 3 of 2

Case 5:22-cv-00088-DAE   Document 8   Filed 04/11/22   Page 30 of 34

Sec. 22-1. - Police department.

(a)   The city police department shall be operated as a departmental function of the city; its employees shall be governed by the administrative policies set forth in chapter 2 of this Code concerning city employees.

(b)   Police officer positions. The chief of police shall be appointed by and serve at the pleasure of the city manager subject to the approval of the city council. The chief of police shall be the administrative head of the police department. The city council may create additional positions in the police department as it shall deem advisable. Appointments of patrolmen and other peace officer positions within the police department shall be made by the chief of police (or, in the event of a vacancy in the position of chief of police, by the police department executive officer,) subject to the approval of the city manager.

(c)   Powers. The police officers appointed pursuant hereto shall have all powers, rights and authority vested in city marshals, and conferred by state law.

(Code 1985, § 21.100; Ord. No. 2010-11, 9-16-2010)

Sec. 2-2. - City manager.

(a) *Nomination and confirmation.* The city manager shall be nominated by the mayor and such nomination shall be subject to confirmation by a majority of the council and the mayor shall not vote upon such confirmation. The city manager shall hold office at the will of the city council.

(b) *Compensation.* The compensation of the city manager shall be by salary, payable monthly or semi-monthly, as shall be fixed from time to time by the city council.

(c) *Surety bond required.* The city manager shall furnish a surety company bond to be approved by the city council; the premium on said bond to be paid by the city.

(d) *Absence or disability.* During the absence or disability of the city manager, the city council shall designate some properly qualified person to perform the duties of the office.

(e) *Powers and duties.* The powers and duties of the city manager shall be:

(1) To devote all of his working time and attention to the affairs of the city, and be responsible to the council for the efficient administration of the city's affairs.

(2) To exercise supervision and control over all departments now created or to be created by the city council unless otherwise provided.

(3) To see that all terms and conditions imposed in favor of the city or its inhabitants in any public utility franchise are faithfully kept and performed and, upon knowledge of any violation thereof, to call the same to the attention of the city council.

(4) To act as budget officer and as such to prepare and submit to the city council prior to the beginning of each fiscal year a budget of proposed expenditures for the ensuing year, showing in as much detail as practicable the estimated amounts required for the efficient operation of each department of the city government and the reasons for such estimated expenditures.

(5) The city manager, in addition to subsection (e)(4) of this section, shall make and file a budget as required by state law.

(6) To make a full written report to the city council at the regularly scheduled city council meeting after the close of each month's accounts, showing the operation and expenditures of each department for the preceding month and a comparison of such monthly expenditures by departments, with the

allowances made for such departments in the annual budget, and to keep the
city council fully advised at all times as to the financial condition and needs of
the city.

(7)   To act as purchasing agent for the city and to purchase all merchandise,
material and supplies needed by the city; and to adopt such rules and
regulations governing requisitions between himself as purchasing agent and
the heads of the departments, officers and employees of the city, as the city
council may approve.

(8)   To recommend to the city council the salaries to be paid each appointive
officer and subordinate employee of the city; and it shall be the duty of the
city council to pass ordinances or resolutions, from time to time, fixing the
rates of compensation.

(9)   To recommend to the city council in writing, from time to time, for adoption,
such measures as he may deem necessary or expedient.

(10)   To do and perform such other duties as may be prescribed by ordinances and
resolutions of the city council.

(f)   *Conflict of duties.* All rules of the city prescribing the duties of heads of
departments shall remain in full force and effect except insofar as they conflict
with the provisions of this section, in which case the provisions of this section shall
govern.

(Code 1985, § 2.200; Ord. No. 525, 6-27-1961)

Case 5:22-cv-00088-DAE   Document 8   Filed 04/11/22   Page 33 of 34

Sec. 2-7. - Amendments.

The city manager, with approval of the city council, may change or amend administrative rules within statutory limitations to the extent deemed necessary in order to effectively and efficiently promote the interest of the city.

(Code 1985, § 2.502)

# City of Olmos Park

