IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JACK MILLER** | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **Case No.: 5:22-CV-00088-DAE** |
| | § | |
| **RENE VALENCIANO, JAMES LOPEZ** | § | |
| **and CITY OF OLMOS PARK** | § | |
| *Defendants.* | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Jack Miller files this *Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Original Complaint* in response to *Defendants' Motion to Dismiss Plaintiff's Original Complaint. See* Dkt. No. 8.  For the reasons stated herein, Plaintiff respectfully requests this Honorable Court deny Defendants' Motion in its entirety, or in the alternative, stay the matter.

## I.   STATEMENT OF FACTS

In February 2018, Defendant Rene Valenciano ("Defendant Valenciano") became aware that open carry activists publicly opposed Defendant City of Olmos Park's ("Defendant City") ordinance banning the open carry of rifles.  *See* Dkt. No. 1, ¶¶ 8-13.  Since that time, he, as a policymaker for the City (and as ratified by the City), implemented a policy of treating constitutional rights activists as criminals.

Consistent with this policy, Defendant Valenciano, who opposed activist viewpoints, prepared (and directed Olmos Park Police Department staff to assist in preparing) a PowerPoint

presentation ("Surveillance Dossier") comparing the open-carry activists (specifically, Plaintiff Jack Miller) to mass-murders and cop killers. [*Id.* ¶ 11]. This slanted PowerPoint presentation was provided to law enforcement officials on local, state, and federal levels.  [*Id.* ¶ 14-15].

Defendant Valenciano, as the Chief of Police (and policy approver) for Defendant City, presented the Surveillance Dossier to a large array of law enforcement officials on local, state, and federal levels and then directed the distribution of the Surveillance Dossier to hundreds of law enforcement and government officials.  [*Id.* ¶ 14].  One version of that PowerPoint produced through a request under the Texas Public Information Act is attached at Dkt. No. 9-1.

Disappointed he could not pursue Plaintiffs on criminal charges based on their peaceful March 2018 protest, and likely aware he was in the wrong and facing civil liability, Defendant Valenciano begin enlarging his Surveillance Dossier by soliciting and compiling private information, historical data, and other information from various sources on specifically pertaining to the Plaintiffs' personal affairs. [*Id.* ¶¶ 15-18]. Defendant Valenciano has continued to build his Surveillance Dossier on Plaintiffs and continued to share the Surveillance Dossier and other information, including personal confidential information, with other law enforcement and government agencies.  [*Id.* ¶ 40].

Defendants continue to target Plaintiff with this Dossier in hopes that it will make future law enforcement interactions more dangerous.  Defendants know that Plaintiff is an activist that interacts with law enforcement regularly, so the potential danger Defendants are creating is foreseeable.  Defendants hope to cause Plaintiff physical harm or to otherwise chill his First Amendment rights.

On February 5, 2020, Plaintiff was in his truck in a public parking lot near Olmos Park City Hall when Chief Valenciano approached him and ordered him to leave.  [*Id.*, ¶ 28].  During

that dialogue, Chief Valenciano threatened Miller, stating, "You'll know if I hurt you," which is was a reference to Valenciano previously and unlawfully tasering a constitutional rights activist. [*Id.*].  The following day, Plaintiff was on a public sidewalk across the street from Olmos Park City Hall while exercising his First Amendment rights by holding a video camera in one hand and a replica rifle pointing downward slung behind him.  [*Id.*, ¶ 29].  Chief Valenciano, consistent with City policy to unlawfully arrest constitutional rights activists (that are viewed as cop killers and mass murders), walked outside with Defendant Officers and immediately and violently arrested Plaintiff.  [*Id.* ¶¶ 30-34].

Defendants, consistent with official City policy aimed toward constitutional rights activists, filed four charges against Jack Miller (assault of a peace officer, resisting arrest, disorderly conduct for displaying a firearm, and obstruction of a passageway). [*Id.* ¶ 36].  Except for the resisting arrest charge (which remains open) all charges were dismissed by the Bexar County District Attorney's Office.  [*Id.* ¶ 37].

On February 1, 2022, Plaintiff filed this lawsuit asserting First Amendment Retaliation (COUNTS 1-2), Malicious Prosecution (COUNT 3), Unlawful Arrest (COUNT 4), Excessive Force (COUNT 5), Failure to Intervene (COUNT 6), Failure to Provide Medical Care (COUNT 7), and municipal liability (COUNT 8).

## II.    ARGUMENT

### A.    First, Plaintiff's pleadings are sufficient to establish subject matter jurisdiction and to state claims for which relief can be granted.

The sufficiency of Plaintiff's pleadings is governed by FED. R. CIV. P. 8(a)(2), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

All that is required under the Federal Rules of Civil Procedure is for Plaintiff to plead "a short and plain statement of the claim showing that [he is] entitled to relief." FED. R. CIV. P. 8(a)(2). The statement need only provide Defendants "fair notice" of the claims and the respective factual bases for the claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Specific facts are not necessary." *Inhale, Inc. v. Gravitron, LLC,* 2018 U.S. Dist. LEXIS 223241, at *3 (W.D. Tex. Dec. 10, 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).   Instead, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Balle v. Nueces County*, 952 F.3d 552, 556 (5th Cir. 2017) (quotations and citations omitted).  "However, when a complaint contains sufficient factual allegations, a court should not grant a motion to dismiss for 'imperfect statement of the legal theory supporting the claim asserted.'" *Id.* (citation omitted) (quoting *Johnson v. City of Shelby County*, 574 U.S. 10, 11 (2014)).

In deciding a motion under Rule 12(b)(6), the court views the pleadings in a light most favorable to the Plaintiffs and assumes that all facts in Plaintiffs' complaint are true. *Club Retro, L.L.C., v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Likewise, "[c]ourts analyze Rule 12(b)(1) motions to dismiss under the same standard as a motion to dismiss under Rule 12(b)(6)." *Trontech Licensing v. Thomson, Inc.*, No. 6:06CV451, 2007 U.S. Dist. LEXIS 117676, at *5 (E.D. Tex. Nov. 7, 2007) (citing *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "The Fifth Circuit also allows the district court to consider documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Zucker v. Farish*, Civil Action No. 3:18-CV-01790-K, 2018 U.S. Dist. LEXIS 209912, at *7-8 (N.D. Tex. Dec. 12, 2018) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

The issue "is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir.

2020). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6), and in turn under Rule 12(b)(1), "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 231 (5th Cir. 2009); *Lasslett v. Tetra Tech, Inc*., Civil Action No. 2:13-CV-072-AM-CW, 2015 U.S. Dist. LEXIS 194966, at *4 (W.D. Tex. Feb. 20, 2015) ("A motion for a more definite statement filed pursuant to Rule 12(e) of the Federal Rules of Civil Procedure should only be granted when the pleading to which it is addressed is so vague that it cannot be responded to.").

Plaintiff's complaint lays out in detail Defendant Valenciano's and Defendant City's attitude and policies toward constitutional rights activists since February 2018.  The complaint details the retaliatory effects of those policies, practices, and custom and of the individual defendants' conduct in arresting Plaintiff in February 2020.  Plaintiff met his pleading burden. Defendant City is trying to avoid their role in this matter with an affidavit.

Defendant Valenciano is clearly a policymaker.  He previously testified (and documents clearly establish) that he created, reviewed, and approved the written policies for the Olmos Park police department.  Him and the Defendant City previously testified that Valenciano was also principally responsible for the training of, and handling complaints against, Olmos Park Police Officers.  Since these deposition transcripts and Valenciano-signed policies are deemed "confidential" Plaintiff will provide them to the Court *in camera* if it so chooses.  However, Plaintiff contends that evaluating information beyond the pleadings at this stage is premature.

**B.**     **Second, the *Younger* abstention doctrine simply does not apply because there is no related state action.**

Plaintiff moved for nonmonetary relief related to Defendants Valenciano and City portraying Plaintiff as a cop killer or mass murderer to other law enforcement agencies.  *See* **Ex. A**.  This has nothing to do with the resisting arrest charge from Plaintiff's February 2020 arrest.

Nonetheless, Defendants ask this Court to abstain from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief under *Younger v. Harris*, 401 U.S. 37 (1971).

Defendants specifically contend that the Court should abstain since the Court lacks jurisdiction over the property at issue, the property seized was for state criminal proceedings, Plaintiff can raise his constitutional challenges in state court, and the injunctive relief sought is overbroad.  Dkt. No. 8, ¶ 18.

The injunctive relief at issue pertains to Defendant Valenciano and Defendant City creating, maintaining, expanding, and disseminating derogatory information toward Plaintiff with the purpose of portraying him as a cop killer and mass murder.  *See* Dkt. No. 9-1.  The nonmonetary relief sought has nothing to do with any ongoing criminal proceedings.

Defendants attempt to confuse the issue by raising property.  Defendants temporarily seized and searched Plaintiff's vehicle before returning it to him a few days later.  *See* Dkt. No. 1, ¶ 35.  It is not correct to assert that the vehicle remains in the possession of the State.

As further explained below, Plaintiff is without any opportunity to challenge in the state court proceeding Defendant Valenciano's and Defendant City's retaliation against him by creating, maintaining, and disseminating over the years false and derogatory information about Plaintiff, as portrayed at Dkt. No. 9-1, with the sole purpose of retaliating against him and escalating future law enforcement interactions.

### C. __Third,__ Texas law and Defendants are preventing Plaintiff from raising constitutional challenges in the state court proceedings.

Even if the Court finds that the *Younger* abstention doctrine could apply, it would not prohibit this matter going forward since the Texas Legislature expressly prohibits Plaintiff, as a criminal defendant charged with resisting arrest, from challenging the legality or lawfulness of his arrest.  *See* Tex. Penal Code § 38.03(b) ("It is no defense to prosecution . . . that the arrest . . . was

unlawful."). Even more critical is that Defendants are actively fighting Plaintiff's attempts to raise these challenges in the criminal proceeding.

On March 31, 2022, the trial judge in the criminal matter ordered the release of deposition testimony from Defendant Valenciano and Defendant City's representative. Dkt. No. 9-2. On April 8, 2022, counsel for Defendants City and Valenciano filed in the criminal case a *Motion to Quash Production of Deposition Transcripts and Rescind Agreed Order on Motion to Compel Discovery*. Dkt. No. 9-3. Defendants are clearly hampering whatever limited chance Plaintiff has, as a criminal defendant, to raise constitutional challenges in the criminal proceeding.

**D. <u>Fourth</u>, if this Court concludes that the *Younger* abstention doctrine does apply to this matter, Plaintiff requests that the Court stay the proceedings rather than dismiss.**

The parties are in agreement that in the event this Court finds that the *Younger* abstention doctrine applies, it should stay the proceedings rather than dismiss. The Fifth Circuit Court of Appeals recognizes that "a court should stay proceedings in a § 1983 case brought by a [criminal defendant awaiting trial] until the related pending criminal case is resolved." *Gross v. Normand*, 576 F. App'x 318, 319 (5th Cir. 2014) (per curiam) (citing *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995)).

**E. <u>Fifth</u>, the nonmonetary relief sought by Plaintiff is concise, unambiguous, and limited to the unlawful and retaliatory collection and derogatory dissemination of sensitive information that is for no other purpose other than to deter constitutionally protected activity.**

Plaintiff seeks to enjoin Defendant Valenciano and Defendant City from "maintaining their policies, practices, and custom of collecting, retaining, and surveilling Plaintiff and individuals who lawfully exercise their First Amendment rights, and then portraying this information with other law enforcement agencies to cause harm to Plaintiff and attempt to deter Plaintiff from engaging in constitutionally protective activities." Dkt. No. 1, ¶ 126. Plaintiff further seeks to

enjoin Defendants from City policies, practices, and custom to "surveil Plaintiff, collect personal information on Plaintiff, or retain personal information of Plaintiff, if he is not committing any crime and otherwise following all ordinances, statutes, and law." Dkt. No. 1, ¶127.

Plainly stated, Plaintiff is attempting to enjoin Defendants Valenciano and the City of Olmos Park from collecting information on Plaintiff for no other reason other than to chill his First Amendment rights, and to stop the dissemination of information to other law enforcement agencies that categorize Plaintiff as a mass murderer or cop killer. If this needs to be stated differently, Plaintiff requests that he be permitted to amend his complaint.

In reviewing a claim for declaratory judgment, "[a] federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cty*., 343 F.3d 383, 387 (5th Cir. 2003).

To state a claim for declaratory judgement against a city under 42 U.S.C. § 1983, a plaintiff must comply with *Monell*'s "policy or custom" requirement. *See L.A. County v. Humphries*, 562 U.S. 29, 34 (2010); *see also Sullo & Bobbitt, PLLC v. Abbott,* Civil Action No. 3:11-CV-1926-D, 2012 U.S. Dist. LEXIS 95223, at *52 n.23 (N.D. Tex. July 10, 2012). As discussed herein, Plaintiff properly alleges an ongoing policy by Defendant City and Defendant Valenciano to gather, surveil, and disseminate the personal private information of Plaintiff and other individuals exercising their First Amendment rights through the use of government resources and assets—and then portray Plaintiff in a derogatory manner by explicitly declaring him a mass murderer and cop killer.

This Court has the authority to adjudicate Plaintiff's claims of constitutional violations. *See* 28 U.S.C. § 1331, 1343. Further, Plaintiff has the requisite standing to request declaratory relief.

"A plaintiff can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, by establishing actual present harm or a significant possibility of future harm." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).  Here, Plaintiff, as well as all other individuals that exercise their First Amendment rights in the City of Olmos Park, are at risk of a significant possibility of future harm, *i.e.*, that they may be surveilled, documented or even arrested by a Defendant City Officer without cause as a result of Defendants' unconstitutional policies, and then broadcasted to other law enforcement agencies as cop killers and mass murders.  Accordingly, this honorable Court is within its discretion to decide the request for declaratory relief and Defendants' motion should be denied as Plaintiff states a claim for an unlawful policy, practice or custom sufficient to state a claim against Defendant City.

### F. Defendants Valenciano and Lopez are not Entitled to Qualified Immunity Because their Conduct, As Alleged, Violated Plaintiff's Clearly Established Rights.

"A public official is entitled to qualified immunity unless a plaintiff can show (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Gerhart v. McLendon*, 714 F. Appx. 327, 333 (5th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Qualified immunity "is an affirmative defense which must be established by the defendant." *Teladoc, Inc. v. Tex. Med. Bd*., 2015 U.S. Dist. LEXIS 166754, at *18-19 (W.D. Tex. Dec. 14, 2015) (collecting cases).  In this analysis, "the public official's state of mind is generally no longer relevant in deciding a claim of qualified immunity." *Floyd v. City of Kenner*, 351 F. Appx. 890, 896 (5th Cir. 2009) (quoting *Tompkins v. Vickers*, 26 F.3d 603, 607 (5th Cir. 1994)). "Nonetheless, [the Circuit] has explained that "motive or intent must be considered in the qualified immunity analysis where unlawful motivation or intent is a critical element of the alleged constitutional violation."" *Floyd*, at 896 (quoting *Tompkins*, at 607).  Here, Defendants Valenciano and Lopez have not established that they are

entitled to qualified immunity on Plaintiff's claims.

Defendants Valenciano and Lopez are not entitled to qualified immunity for their alleged conduct because they violated Plaintiff's clearly established right (1) to be free from excessive force under the Fourth Amendment,[1] (2) to be free from unlawful arrest under the Fourth Amendment,[2] (3) to be free from abridgement of protected speech under the First Amendment,[3] and (4) to be free from retaliatory actions for engaging in protected speech under the First Amendment.[4]

When Defendants Valenciano and Lopez unlawfully assaulted and arrested Jack Miller on February 20, 2020, they did so because he was Jack Miller and not because he was committing any crime.  He was on a public sidewalk lawfully carrying a firearm slung behind him pointed downward while filming the front of Olmos Park City Hall in protest.  On February 20, 2020, these Defendants knew (and have known since February 2018) that Plaintiff had a right to openly carry a firearm.  Defendants Valenciano and Lopez had prior interactions with Jack Miller and regularly detain him at gunpoint and arrest him for exercising that right.  Prior to February 20, 2020, all charges they attempted to bring against Jack Miller were regularly dismissed.  This did not stop

---

[1] *Poole v. City of Shreveport*, 691 F3d 624, 627 (5th Cir. 2012).

[2] *Brower v. County of Inyo*, 489 U.S. 593, 595 (1989).

[3] *See Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental actions against an individual in retaliation for the exercise of protected speech activities."); *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 191-192 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department.").  *See also* see *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595, 608 (7th Cir. 2012) (stating that making a recording "is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording."); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding, in a case involving citizens videotaping police, that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing, in case involving citizen filming police officers, a "First Amendment right to film matters of public interest.").

[4] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citing *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999)).

---

Defendants Valenciano and Lopez from continuing to detain, arrest, and assault Jack Miller.

Defendants Valenciano and Lopez knew that they did not have a lawful basis to detain, assault, and arrest Jack Miller, but they did it anyway (just as they have done before). They did not stop the constitutional violations from occurring. Then, as Jack Miller screeched in pain, they continued to assault him and apply pain compliance techniques without ever providing medical attention (or even asking).

Defendants Valenciano and Lopez are not entitled to qualified immunity for their alleged conduct because they violated Plaintiff's "clearly established constitutional right to be free from retaliation for exercising [Plaintiff's] First Amendment freedoms." *Khoury v. Miami-Dade Cty. Sch. Bd.*, 29 Fla. L. Weekly Fed. C 6 (11th Cir. 2021). In order to establish a First Amendment Retaliation claim, the Plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the Defendants' actions caused him to suffer an injury that would chill persons of ordinary fitness from continuing to engage in that activity, and (3) the Defendants' adverse actions were substantially motivated against Plaintiff for exercising his constitutional rights. *Villarreal v. City of Laredo*, 17 F.4th 532, 542 (5th Cir. 2021).

Following Defendants' initial interactions with Plaintiff Jack Miller in February 2018, Defendant Valenciano begin compiling information on Jack Miller and then portraying him as a cop killer and mass murderer. Dkt. No. 9-1. Later in February 2018, Defendant Lopez, following City Policy, held Jack Miller at gun point and ordered him to the ground while Jack Miller was simply holding a sign with a holstered replica firearm on a public sidewalk. Dkt. No. 1, ¶¶ 8-12. Defendant Valenciano admits in deposition testimony in other matters (available for *in camera* inspection) that he held meetings with the City and his officers concerning Jack Miller and other activists. Defendant Valenciano also knew that by portraying Plaintiff in a negative light, and then

sharing this information with law enforcement and government agencies, it would have a negative impact on Plaintiff's future interactions with law enforcement.

More specifically, Defendant Valenciano knew that by portraying Plaintiffs as a criminal with the potential to cause harm or death, that it would immediately escalate future interactions. These acts by Defendant Valenciano were not objectively reasonable as "there is a presumption that 'government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Reitz v. Woods,* Civil Action No. 1:16-CV-0181-BU, 2021 U.S. Dist. LEXIS 123964, at *45 (N.D. Tex. July 2, 2021) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). Defendant Valenciano does not raise any sufficient reasoning to overcome this presumption.

Moreover, heinous accusations of being alleged as those of a mass murders and cop killers would chill an ordinary person from continuing to engage in their right to peacefully protest under the First Amendment.  Defendant Valenciano's Surveillance Dossier targeting Plaintiff was a direct attack by Defendant Valenciano on Plaintiff because he disagreed with the message Plaintiff attempted to convey through peaceful protests.

Without fault, Defendant Valenciano's and Defendant Lopez's actions were in violation of Plaintiff's clearly established right to peacefully protest and to be free from excessive force and unlawful arrest.  Defendant Valenciano and Defendant Lopez are not entitled to qualified immunity.

### G. Plaintiffs' Compliant Includes Sufficient Evidence to State a Claim for an Unlawful Policy, Practice, or Custom Against Defendant City.

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Balle,* 952 F.3d at 559-60 (reversing district court's dismissal

of municipal liability claim where plaintiff pled sufficient facts and was not required to identify the relevant policymaker).

An official policy can be shown through evidence of a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (citation omitted). "Alternatively, [an] official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id*. "Finally, a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations may, in some circumstances, give rise to municipal liability under § 1983." *Id*. (quotations omitted). Indeed, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which the County [or city] may be liable." *Id*. at 462.

Plaintiff's complaint alleges a policy to retaliate against activists that believe the City wrongfully detains and arrests individuals that lawfully and openly carry firearms. Dkt. 1, ¶ 110. Plaintiff identifies the policymakers, Defendant City and Defendant Valenciano, and the policies, practices, and custom at issue. [*Id.* ¶ 110-121].

Plaintiff adequately pleads with specificity the factual allegations necessary to show the existence of an unlawful municipal policy, practice, or custom. Plaintiff believes further discovery will thoroughly uncover this municipal policy, practice, or custom Defendants now seek to conceal. *See Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017) (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011)) ("In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff

will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery."). Plaintiff requests this Court find that Plaintiff sufficiently pled the existence of an unlawful municipal policy, practice, or custom to continue this fruitful litigation.

"The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Specifically, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411. As explained by the Fifth Circuit, "[w]hile an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Balle*, 952 F.3d at 558; *see also James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009).

Plaintiff properly alleges that the conduct of Defendant Valenciano and Defendant Lopez in arresting Jack Miller for no other reason than knowing he was an activist openly and lawfully carrying was a longstanding City Policy. Moreover, Defendant Valenciano collecting and surveying Plaintiff's personal life and then portraying him as a cop killer and mass murderer throughout the law enforcement community was a direct consequence of Defendant City's policy, practice and custom to arrest and prosecute those engaged in protected conduct for false reasons, thereby satisfying the 'moving force' element.

Defendant City is alleged, through policy, custom, and practice, of giving Chief Valenciano unprecedented authority to pursue his endeavors to retaliate against Plaintiffs. Plaintiffs sufficiently allege that this policy, practice, or custom demonstrates deliberate indifference to constitutional rights under the First Amendment.  Dkt. No. 1, ¶¶ 110-121.

Further, a policy to chill Plaintiff's First Amendment rights was adopted with the consent or deliberate indifference to the policy maker's actions—Defendant Valenciano—by Defendant City.  Finally, Plaintiff sufficiently alleges a pattern of violations from this unlawful policy, practice or custom where they allege Defendant Valenciano has, on several occasions detained or arrested (and sometimes assaulted) law abiding citizens that openly carry firearms, and on other occasions, gathered, surveilled, and disseminated the personal private information of individuals exercising their First Amendment rights.

In the Fifth Circuit, "pleadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employee's" constitutional violation. *Balle*, 952 F.3d at 559.  Plaintiff's allegations specifically pertaining to Defendant City and Defendant Valenciano's unlawful policy, practice, or custom to detain, arrest, and assault constitutional rights activists, and then to gather private information on Plaintiff and other activists (or perceived activists) using government resources because they disagreed with the substantive message of Plaintiff's protest, is sufficient to "support an inference that unconstitutional [city] policies were the 'moving force' behind" the constitutional violation. *Id.*  Plaintiff requests this Court find he sufficiently alleged an unconstitutional policy, practice or custom, promulgated with deliberate indifference, that was the moving force behind the constitutional violations alleged.

**H.  Plaintiff's Claims are Not Premised on *Respondeat Superior*.**

While undoubtedly a red herring from Defendants, Plaintiffs will briefly address Defendants' unfounded argument that Plaintiffs' *Monell* claim is premised in respondeat superior or vicarious liability.  Plaintiff agrees that a *Monell* claim may not be based on *respondeat superior* liability alone.  *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Plaintiff's claims are not based in *respondeat superior* liability as would be the case if Plaintiff was attempting to hold the municipalities liable for the acts of the individual officers. Rather, Plaintiff is holding the municipalities liable for its unconstitutional policy, practices, and custom, in addition to its failure to train and supervise its law enforcement officers and employees which caused Plaintiffs injures.  **If more appropriate, Plaintiff requests that he be allowed to amend his petition to name the City Manager as a co-defendant.**

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss in its entirety. If the Court finds that Plaintiff's pleadings are defective, Plaintiff requests the Court afford him an opportunity to amend by addressing any alleged defects and to name the City Manager as a co-defendant.

Respectfully Submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332

## CERTIFICATE OF SERVICE

I hereby affirm that on this 18th day of April 2022, that the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*
**Brandon J. Grable**