**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JACK MILLER** | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **Case No.: SA:22-CV-0088-DAE** |
| | § | |
| **RENE VALENCIANO, JAMES LOPEZ** | § | |
| **and CITY OF OLMOS PARK** | § | |
| *Defendants.* | § | |

---

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Jack Miller ("Plaintiff"), by and through his attorneys, amends his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and respectfully alleges as follows:

## I.     JURISDICTION AND VENUE

1.     This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. 1983 and the First and Fourth Amendments of the United States Constitution.

2.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331 since this action arises under the Constitution and the laws of the United States.

3.     Venue is proper in the United States District Court for the Western District of Texas because the majority of events complained of occurred in this district.

4.     Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against Defendants for

1

the violations of Plaintiff's Constitutional rights and harm caused by Defendants' action and inaction.

## II.     PARTIES

1.       Plaintiff, JACK MILLER ("Plaintiff") is a law-abiding citizen of the State of Texas.

2.       Defendant, RENE VALENCIANO ("Defendant Chief Valenciano") is a Texas resident and at all times relevant to this complaint, was the Chief of Police for the City of Olmos Park Police Department.

3.       Defendant, JAMES LOPEZ ("Defendant Officer Lopez") is a Texas resident and at all relevant times to this complaint acts as a police officer for the City of Olmos Park Police Department. Defendant Officer Lopez is being sued in his individual capacity.

4.       Defendant, CITY OF OLMOS PARK ("Defendant City"), is a municipality in the State of Texas.

5.       Defendant CELIA DELEON ("Defendant DeLeon"), is a Texas resident and at all times relevant to this complaint was the City Manager for the City of Olmos Park Police Department.

## III.     FACTUAL ALLEGATIONS

6.       Plaintiff is a constitutional rights activist who commonly exercises his rights through peaceful protests and peaceful demonstrations. Plaintiff focuses his efforts on showing the great work constitutionally respective public servants can do. However, Plaintiff has a contextual necessary background with the Defendants in this complaint.

7.       **February 5, 2018**.  The following event kicked off a series of events that led to the issue before the Court.  On February 5, 2018, Constitutional Rights activist, Mike Thompson, was arrested in the 4300 block of McCullough Avenue, Olmos Park, Texas by Olmos Park Police

Sergeant Ruiz ("Sergeant Ruiz") and Olmos Park Police Officer Viera ("Officer Viera") simply because he was open carrying a rifle.[1]  Officer Viera did not arrest any other individual open carrying because no one called 9-1-1 on them.[2]  Sergeant Ruiz and Officer Viera received information during the original call of service that Mr. Thompson was not point the rifle at anyone.

8.     **February 10, 2018**.  Plaintiff, in protest of Mr. Thompson's February 5th arrest and Olmos Park's handling of citizens lawfully open carrying firearms, openly carried a rifle in the 4300 block of McCullough Avenue, at the same location Mr. Thompson was arrested.[3]  Olmos Park police officers detained Plaintiff at gunpoint and cited Plaintiff for open carrying a firearm in violation of Section 24-85 of the Olmos Park City Code of Ordinances, a since-repealed ordinance.[4]

9.     **February 16, 2018**.  Defendant Chief Valenciano, with the consent of Defendant City and Defendant DeLeon, instructed his assistant, who is now the Olmos Park City Secretary, Kyndra Munoz, to create a PowerPoint.[5] Chief Valenciano added information to the PowerPoint presentation that focused on Plaintiff.  In the PowerPoint presentation, Defendant Chief Valenciano compared Plaintiff to the likes of mass shooters and cop killers.

10.     **February 20, 2018**.  Similar to Mr. Thompson, Plaintiff lawfully stood in the 4300 block of McCullough Avenue with a rifle slung around him in protest. Plaintiff was detained and arrested at gunpoint.

---

[1] https://www.youtube.com/watch?v=FxgaYsh0cQA. (0:44-1:20).
[2] *Id.* (6:30-7:30).
[3] https://www.youtube.com/watch?v=rUGrQtExsgs (1:30-6:20).
[4] https://www.youtube.com/watch?v=rUGrQtExsgs (6:20-20:41).
[5] *See* Dkt. No. 9-1.

11.   **February 21, 2018**.  Plaintiff posted on his Facebook page that he disagreed with Olmos Park arresting anyone carrying a rifle in public. Defendant Chief Valenciano's PowerPoint presentation contained a screenshot of Plaintiff's Facebook post.

12.   **March 1, 2018**.  Chief Valenciano presented his PowerPoint presentation to local, state, and federal law enforcement officials.

13.   **March 5, 2018**.  Chief Valenciano directed the dissemination of his PowerPoint to dozens of local, state, and federal law enforcement officials.

14.   **March 16, 2018**.  Defendant Officer Lopez held Plaintiff at gunpoint for carrying a sign and having a toy firearm holstered on his hip.[6]  Defendant Officer Lopez detained Plaintiff, disarmed him, put him in cuffs, and placed in the back of his police vehicle.  Once Defendant Officer Lopez realized the firearm was not real, he released Plaintiff.

15.   **March 26, 2018**.  Mr. Grisham contacted Defendant Valenciano to question him about policies concerning the handling of constitutional rights activists.  Mr. Grisham informed Defendant Valenciano that would be showing up and was concerned about getting held at gunpoint and directed to the ground.  Defendant Valenciano immediately reported this information to Defendants City and DeLeon with a plan of action on how to handle constitutional activists should they come to the City.  Defendant Valenciano's goal was to "squash the rebel."

16.   **March 27, 2018**.  A Second Amendment protest was held in the city of Olmos Park. Disagreeing with the validity of the protest, Defendant Chief Valenciano discharged his taser at one protester, Mr. Grisham.[7]  Once Grisham and others were detained, Defendant Valenciano reported to his officers via dispatch that he had "squashed the rebel."

---

[6] https://www.youtube.com/watch?v=RzkaLIYzB6A&t=11s (1:06-3:08).
[7] https://www.youtube.com/watch?v=GrDAPPiu1QE (5:45-6:00).

17.     Mr. Grisham was rushed to the hospital for medical treatment because of Defendant Chief Valenciano's illegal use of force. Another protester, Mr. Everard, was pushed to the ground and manhandled by Olmos Park Officer Viera and Sergeant Ruiz. Mr. Everard required shoulder surgery and extensive medical therapy because of Officer Viera and Sergeant Ruiz's illegal use of force.  Despite numerous complaints made to the City, not a single officer was investigated, reprimanded, or otherwise punished.

18.     **March 29, 2018**.  Defendant DeLeon disseminated "A message from CITY OF OLMOS PARK" to one or more city managers and city representatives of different municipalities, and anyone else subscribed to these messages, stating the following:

> **Texas is an "Open Carry" state which authorizes persons to openly carry a handgun on their person provided he/she is licensed by the State and the person is not committing a crime.  In Texas, a citizen is also allowed to openly carry a long gun without a permit as long as the person is not violating any law.  In fact, a person who may have been denied a "License to Carry" a handgun permit may legally still carry a rifle and/or a shotgun without a license in public provided they are not prohibited by law and/or committing a crime.**[8]

19.     Despite Defendant DeLeon holding out what Defendant City's recognition of the law is to other municipalities, she continued to ratify the conduct of Defendant Officers.

20.     Despite calls for investigations, Defendant Officers were not investigated, reprimanded, or punished following the March 27, 2018, incident (or any other previous incident

---

[8] Dkt. No. 12-1.

described above) that involved constitutional rights activists that peacefully openly carried firearms in protest.

21.     Defendants City, DeLeon, and Valenciano sent the message loud and clear to the City of Olmos Police Department officers, since 2018, that holding at gunpoint, detaining, arresting, and assaulting law-abiding citizens that broke no law but protested the right to openly carry firearms was entirely acceptable conduct.

22.     Consistent with Defendant City's ratification of Defendant Officers' conduct, the unlawful treatment of Plaintiff Jack Miller was completely foreseeable and expected.  These unconstitutional violations are expected to continue.  Despite years of opportunities to stop its officers from violating the constitutional rights of peaceful protestors that openly carry firearms in front of or near City Hall, Olmos Park does nothing and continues to stand behind its officers while tramping the rights of law-abiding citizens.

23.     Defendant City does not have any formal process to investigate complaints made against Defendant Valenciano.  Concerns about whether Defendant Valenciano trains and supervises his officers is handled informally by Defendant DeLeon.  There is no writing, no findings, and no process.  Citizens are not able to identify the number of complaints made against Defendant Valenciano and the results of those complaints, because there is nothing documented.

24.     Defendant City completely ratifies the unlawful conduct of Defendant Officers, or in the alternative, acts with deliberate indifference.

25.     Since 2018, Defendant Chief Valenciano, with guidance and approval of Defendant City and Defendant DeLeon, continued to add misleading information to the surveillance PowerPoint and continue to brief and share his views about Jack Miller to the law enforcement world.

26.     **February 6, 2020.**  Plaintiff was standing in a public space across the street and about a half a block away from the Olmos Park City Hall.  Plaintiff was there to exercise his First Amendment right to protest the continuous unconstitutional acts and orders of Defendant Chief Valenciano, Defendant DeLeon, and Defendant City.[9]  Plaintiff had a video camera in his hands and a toy rifle tightly secured on his back.  The muzzle of the toy was pointing safely at the ground to send a clear message that the firearm was not displaced in a disorderly manner.

27.     Soon after Plaintiff arrived, Defendant Chief Valenciano and Defendant Officer Lopez immerged from City Hall with several other individuals.  Defendant Chief Valenciano and Defendant Officer Lopez immediately turned in Plaintiff's direction and began aggressively walking towards Plaintiff.  Defendants had long recognized Jack Miller and knew he was a constitutional rights activist that peacefully protested unconstitutional policies.  In Defendants' view, Plaintiff was part of the "rebel."

28.     Despite knowing Plaintiff was in a public space and legally carrying a rifle, even if it was a toy, Defendant Chief Valenciano ordered Plaintiff to move across the street.[10]  Without resisting, Plaintiff informed Defendant Chief Valenciano and Defendant Officer Lopez that he would not move.

29.     In response to Plaintiff remaining in a public space, Defendant Chief Valenciano and Defendant Officer Lopez detained Plaintiff without reasonable suspicion.  Upon grabbing Plaintiff's left arm, even though Plaintiff was not actively or passively resisting, Defendant Chief Valenciano began using unnecessary pain compliance on Plaintiff to further subdue him.

---

[9] https://www.youtube.com/watch?v=FTc8zf7oAqY&t=132s.
[10] At this time, there was no investigation in the area or other circumstance that would cause the need for Plaintiff to move from a public space.

30.     Defendant Chief Valenciano twisted Plaintiff's left arm and forced him to the ground. Plaintiff continued to comply with all of the Defendants' requests and remained un-resistive. However, this did not stop Defendants from continuing to use excessive force.

31.     While Plaintiff remained on the ground, grousing in agonizing pain, Defendant Chief Valenciano picked up Plaintiff's left leg and slammed the leg into the asphalt pavement.[11] Despite knowing Plaintiff had a shoulder injury to his left shoulder, Defendant Chief Valenciano, with the assistance of Defendant Officer Lopez, forcefully picked Plaintiff from the asphalt and lead him out of the public view.

32.     As a result of Plaintiff exercising his constitutional rights, Defendant Chief Valenciano and Defendant Officer Lopez procured and forwarded four charges to be filed against Plaintiff for assault of a peace officer[12], resisting arrest[13], disorderly conduct for displaying a firearm[14], and obstruction of a passageway.[15]

33.     Like with other incidents involving Jack Miller and constitutional rights activists that peacefully protested with real or replica firearms, Defendant City and Defendant DeLeon refused to investigate the Defendant Officers' conduct.  Defendant Officers were not reprimanded or punished.

34.     The repeated failures of Defendants City, DeLeon, and Valenciano to correct or punish the unconstitutional conduct of Olmos Park police officers is a continued ratification of official policy to disregard the constitutional freedoms of anyone peacefully protesting in Olmos Park with a real or toy firearm.

---

[11] https://www.youtube.com/watch?v=FTc8zf7oAqY&t=132s (2:34-2:38).
[12] Bexar County Case Number 556674.
[13] Bexar County Case Number 633088.
[14] Bexar County Case Number 633089.
[15] Bexar County Case Number 633090.

35.     The moving force behind this official policy directly results in the City's officers approaching law abiding citizens at gunpoint, detaining them, arresting them, assaulting them, and then falsely charging them with crimes.  This is what happened with Jack Miller on February 6, 2020.

36.     Defendants City, DeLeon, and Valenciano would much rather "squash the rebel" than protect and honor the constitutional freedoms of law abiding citizens seeking to peacefully protest at or near City Hall.

37.     As a result of Defendants actions, Plaintiff's First Amendment rights have been chilled, and he continues to suffer from physical injury protruding from the events of February 6, 2020.

## IV.     CLAIMS AGAINST DEFENDANTS

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Retaliation for Protected Conduct, February 6, 2020 Incident)

38.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

39.     At all times relevant, Defendant Chief Valenciano and Defendant Officer Lopez were acting under color of State law and in accordance with City Policy.

40.     Plaintiff has a First Amendment right to peacefully protest and petition for redress of grievances.

41.     Plaintiff was always engaging in constitutionally protected conduct of petitioning for redress of grievances relevant to this complaint.

42.     In retaliation for engaging in protected conduct, Defendant Chief Valenciano and Defendant Officer Lopez intentionally, knowingly, maliciously, and/or unreasonably detained

9

Plaintiff through use of unnecessary pain compliance and unreasonable use of force.  Defendants, by and through their recommendation, cause Plaintiff to be charged with four crimes.  All of these actions were done without a warrant, probable cause, or any legal basis.

43.     Defendants knew that Plaintiff Jack Miller had a legal right to openly carry a firearm, but considered his presence to be part of a "rebel."  Defendants followed official city policy of detaining, arresting, assaulting, and falsely charging constitutional rights activists viewed as part of the "rebel" even though no crimes were being committed.

44.     Plaintiff had a clearly established constitutional right to be in a public space/forum in front of City Hall while holding a camera armed with a replica rifle strapped behind him with the muzzle aimed toward the ground.

45.     Defendants had no knowledge of any facts or circumstances which would lead a reasonable person in the same or similar circumstances, to believe that Plaintiff had committed a crime or was about to commit a crime.

46.     Such a retaliation would serve as a deterrent to a person of ordinary firmness from engaging in such protected conduct.

47.     There is a casual connection between Plaintiff's constitutionally protected conduct and the adverse retaliatory actions taken by the Defendants.

48.     The Defendants' acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizen of the United States by the First and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

49.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment – Retaliation for Protected Conduct, Surveillance Dossier)

50.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

51.     At all times relevant, Defendants Chief Valenciano and DeLeon were acting under color of State law.

52.     Plaintiff has a First Amendment right to peacefully protest and petition for redress of grievances.

53.     Plaintiff was engaging in constitutional protected conduct of petitioning for redress of grievances at all times relevant to this complaint.

54.     In retaliation for engaging in protected conduct in Olmos Park at or near City Hall, Defendants Chief Valenciano and DeLeon targeted Plaintiff in vast unlawful investigations; labeled Plaintiff to other local, state, and federal law enforcement agencies as anti-government, agitators, and being on par with mass murders and cop killers; unlawfully and without any lawful or other legitimate basis, collected private data and surveillance on Plaintiff and known associates, attempted to get other law enforcement agencies to initiate or assist in unlawful investigations into Plaintiff, and to negatively impact or escalate future law enforcement interactions with Plaintiff.

55.     Defendants Valenciano and DeLeon caused this information to be shared with different law enforcement and government agencies, even though they knew the narrative was false.  Defendants' purpose was to retaliate against Plaintiff and others similarly situated.

56.     At all relevant times, Defendants Chief Valenciano and DeLeon were required to obey the laws of the United States.

57.     Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

58.     Defendant's adverse actions were substantially motivated by Plaintiff's petitioning the government for redress of grievances.  Specifically, Defendants considered Plaintiff to be part of a "rebel" because he peacefully challenged the City of Olmos Park's treatment of law-abiding citizens that lawfully carried firearms in protest.

59.     Defendants Chief Valenciano and DeLeon intentionally, knowingly, maliciously, reckless, unreasonably, and grossly negligently retaliated against Plaintiff for engaging in protected conduct.

60.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(First/Fourth Amendment – Malicious Prosecution)**

61.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

62.     Defendant Chief Valenciano and Defendant Officer Lopez, acting under the color of law, coordinated with Bexar County to maliciously induce the process to charge Plaintiff with frivolous criminal charges.

63.     Defendants' coordination effort and conduct to have Plaintiff prosecuted was done in retaliation for Plaintiff engaging in constitutionally protected activity afforded to him by and through the First Amendment.

64.     Defendants' attempt to have Plaintiff maliciously prosecuted for Plaintiff for assault of a peace officer, disorderly conduct for displaying a firearm, and obstruction of a passageway was done without any lawful basis and in violation of Plaintiff's Fourth Amendment rights.

65.     The charges for assault of a peace officer, disorderly conduct for displaying a firearm, and obstruction of a passageway was terminated in Plaintiff's favor.  These prosecutions ended without a conviction.

66.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

### COUNT IV
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Unlawful Detention/False Arrest)

67.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

68.     Defendant Chief Valenciano and Defendant Officer Lopez willfully detained Plaintiff by and through the use of pain compliance and ordering him under him asserted under the color of law.

69.     Plaintiff did not consent to the detainment or arrest.  Defendants detained and arrested Plaintiff, as they have done before, because they consider Plaintiff to be part of a "rebel" so the City's official policy requires Plaintiff's detention and arrest.

70.     Defendant Chief Valenciano and Defendant Officer Lopez did not have reasonable suspicion or probable cause to detain or arrest Plaintiff. No reasonable officer could have believed there existed reasonable suspicion or probable cause to detain or arrest Plaintiff.

71.     Defendant Chief Valenciano and Defendant Officer Lopez detained, restrained, and arrested Plaintiff without a warrant or other legal authority.

72.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

### COUNT V
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Excessive Force)

73.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

74.     Defendant Chief Valenciano, acting under the color of law, violated Plaintiff's constitutionally protected rights. These violations include the right to be free from excessive force.

75.     Defendant Chief Valenciano's used of force was objectively unreasonable.  The only purpose for Defendant Valenciano to use excessive force was because he viewed Plaintiff to be part of a "rebel" so the City's official policy authorizes its police officers, including its police chief, to use unreasonable and excessive force to "squash the rebel."

76.     Defendant Chief Valenciano never gave Plaintiff a lawful order. Defendant Chief Valenciano and/or Defendant Officer Lopez did not have reasonable suspicion to detain Plaintiff. Defendant Chief Valenciano and/or Defendant Officer Lopez did not have probable cause to arrest Plaintiff.

77.     At no point did Plaintiff resist Chief Valenciano and/or Defendant Officer Lopez. Nevertheless, Defendant Chief Valenciano unreasonably used pain compliance on Plaintiff's wrist and shoved Plaintiff to the asphalt. Defendant Chief Valenciano then unreasonably picked up Plaintiff's left leg and threw Plaintiff's leg against the asphalt. Further, Defendant Officer Lopez

14

and Defendant Chief Valenciano, with knowledge of an injury to Plaintiff's left shoulder, picked Plaintiff's full body weight up off of the asphalt by and through his left shoulder.

78.     Plaintiff never exhibited any signs of violence, nor did Defendant Chief Valenciano and/or Defendant Officer Lopez suspect Plaintiff of being a violent criminal. Defendant Chief Valenciano and/or Defendant Officer Lopez were not in a high-pressure situation that would require split second decisions to be made.

79.     At all relevant times, Defendant Chief Valenciano and/or Defendant Officer Lopez were required to obey the laws of the United States.

80.     At all relevant times, Plaintiff had a clearly established right to be free from excessive force of this nature.

81.     At all relevant times Defendant Chief Valenciano and/or Defendant Officer Lopez intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently used excessive force on Plaintiff.

82.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation and embarrassment.

<u>**COUNT VI**</u>
<u>**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**</u>
<u>**(Failure to Intervene)**</u>

83.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

84.     At all relevant times Defendant Lopez were acting under the color of state law.

85.     Defendant Officer Lopez observed Defendant Valenciano violate Plaintiff's constitutional rights and had a reasonable opportunity to prevent the harm, but nevertheless, chose

not to act.

86.     At all relevant times, Defendant Officer Lopez intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed one another to use excessive force against Plaintiff and otherwise violate Plaintiff's constitutional and statutory rights.

87.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

**COUNT VII**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourteenth Amendment – Failure to Provide Medical Care)**

88.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs. At all times relevant herein, Defendants were acting under color of State law.

89.     The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to an individual injured in their custody.

90.     As discussed herein, Plaintiff physically injured by the unreasonable force used by Defendant Chief Valenciano and/or Defendant Officer Lopez.

91.     Instead of promptly providing medical attention, Defendant Chief Valenciano treated Plaintiff's body as a rag doll – twisting and contorting Plaintiff's limp body as he pleases.

92.     Despite Plaintiff's plead for immediate medical attention, Defendant Chief Valenciano and Defendant Officer Lopez intentionally delayed, denied, and interfered with medical treatment when Plaintiff was obviously physically injured by failing to request medical attention within a reasonable amount of time.

93.     Defendant Chief Valenciano and Defendant Officer Lopez's acts and omissions demonstrate deliberate indifference to Plaintiff's serous medical needs in violation of the Fourth and Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983.

94.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

**COUNT VIII**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Municipal Liability – Unlawful Policy/Failure to Train)**

95.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs. At all times relevant herein, Defendants were acting under color of State law.

96.     A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the municipality's policies and customs.

97.     The actions of Defendant Chief Valenciano, Defendant Officer Lopez, Defendant DeLeon, and the Defendant City, demonstrate a policy, practice, or custom to retaliate and use excessive force against Plaintiff, and others similarly situated, for engaging in their protected First Amendment activity.   Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiff of his right to be free from retaliation for protected conduct and right to be free from excessive force.

98.     Since 2018, Defendant City had full awareness of how its police officers treated constitutional rights activists that peacefully protested at or near City Hall while armed.  Defendant City obtained regular briefings by or through Defendants DeLeon and Valenciano.  Defendant City received complaints about Defendant Valenciano and its officers.

99.     Defendant City, by and through Defendant Valenciano and Defendant DeLeon, failed to investigate any officers, train any officers, reprimand or punish any officers for the way they violate the constitutional rights of law-abiding citizens that openly carry firearms.

100.     Defendant City ratified this unlawful conduct through these failures or acted with deliberate indifference.  Defendant City's failures sent a message to the Olmos Park Police Department that violating the rights of anyone deemed to be part of the "rebel" was not only tolerable but expected.

101.     Accordingly, it was entirely foreseeable that Defendant Valenciano and his officers would continue to violate the constitutional rights of others.  It did not start with Plaintiff, and it certainly will not end with Plaintiff.  Defendant City's official policy remains strong until this Court sends the message that it will no longer be tolerated.

102.     Defendant City, through Defendant DeLeon continuously affirms Defendant Chief Valenciano's illegal conduct and poor supervision and training of the City's officers.  Defendant City acted with deliberate indifference to the constitutional rights of Plaintiff in its continued reaffirmance of Defendant Chief Valenciano's, and City's officers' unconstitutional and illegal acts.

103.     At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and/or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure:

        a.   To adequately supervise and train its officers and agents, including the individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police chief and police officer;

b.  To properly and adequately monitor and discipline its officers, including the individual Defendants; and

c.  To adequately and properly investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants each of the Plaintiff's constitutional rights have been violated.

104.   This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of Plaintiff and is directly responsible for the Defendants acting the way they did as outlined in this complaint.

105.   Further the de facto unwritten policy, procedure, or custom, described herein, including arresting and using excessive force on individuals who engage in protected conduct for false reasons, demonstrates deliberate indifference to the constitutional rights of Plaintiff and is directly responsible for the individual Defendants acting the way they did as outlined in this complaint.

106.   Defendant City's supervision of the individual Defendants was deficient as it relates to excessive force, unlawful arrests, inadequate training, and failure of oversight. Defendant City made a deliberately indifferent choice to not provide adequate supervision of it's Chief or the individual officer, and other officers similarly situated, to ensure that such actions are not repeated, and that is exactly why the individual Defendants and other officers similarly situated, were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein.

107.    Defendant City failed to properly train and supervise the individual Defendants in the constitutional rights of law-abiding citizens.

108.    This unlawful policy or custom and failure to train and supervise was the moving force behind Plaintiff's injuries.

109.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

**<u>COUNT IX</u>**
**<u>DECLARATORY RELIEF</u>**

110.    Plaintiff reallege the material facts alleged in the preceding paragraphs against Defendants. Defendants deprived Plaintiff of his federal constitutional rights to freedom of expression without the fear of retaliation, causing irreparable harm to Plaintiff.

111.    Through continued application and enforcement of their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice, Defendants threaten further violations of these same rights.

112.    Plaintiff is thus entitled to a declaration pursuant to 28 U.S.C. §2201 that his rights arising under the Constitution have been violated by the actions of the Defendants and their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice—are facially unconstitutional and unconstitutional as applied to the activities of Plaintiff.

113.    Plaintiff also seeks a declaration that the City of Olmos Park has an unconstitutional policy of detaining, arresting, and assaulting constitutional rights activists that are armed even though they are  peacefully protesting and not committing any crimes.

114.

## COUNT X
## INJUNCTIVE RELIEF

115.    Plaintiff realleges the material facts alleged in the preceding paragraphs against Defendants. Plaintiff continues to be deprived of his federal constitutional rights under the First Amendment, causing him irreparable harm and threatening additional, immediately impending irreparable injuries.

116.    Defendants, in an ongoing manner, violate Plaintiff's Constitutional rights by maintaining their policies, practices, and custom of collecting, retaining, and surveilling Plaintiff and individuals who lawfully exercise their First Amendment rights, and then portraying this information with other law enforcement agencies to cause harm to Plaintiff and attempt to deter Plaintiff from engaging in constitutionally protected activities, which is in violation of 42 U.S.C. § 1983.

117.    Plaintiff is thus entitled to an injunction preventing Defendants from further enforcement of their policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful or other legitimate purpose or practice that is only sought to deter constitutionally protected activities. Defendants should be enjoined from using their policies, practices, and custom, written or unwritten, surveil Plaintiff, collect personal information on Plaintiff, or retain personal information of Plaintiff, if he is not committing any crime and otherwise following all ordinances, statutes, and law.

118.    Defendants, in an ongoing manner, violate Plaintiff's constitutional rights by detaining, arresting, and assaulting him, and other constitutional rights activists, simply for being armed (or appearing to be armed) with a firearm while peacefully protesting and not committing any crimes.

119.    Plaintiff is thus entitled to an injunction preventing Defendants from unlawfully

detaining, arresting, or assaulting Plaintiff simply because Plaintiff is protesting at Olmos Park with a firearm holstered or slung around him.  Defendants should be enjoined from enforcing a policy to detain and arrest any law abiding citizens, including Plaintiff, that is peacefully protesting if there is no crime being committed, and defendants lack reasonable suspicion or probable cause.

## ATTORNEY'S FEES AND COSTS

120.    It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Plaintiffs seek the recovery of attorneys' fees incurred in the pursuit of this action pursuant to 42 U.S.C. §1988(b) and expert fees pursuant to 42 U.S.C. §1988(c). Plaintiffs also seek recovery of their expenses and costs of court pursuant to 28 U.S.C. §1920.

121.    As a direct and proximate result of the Defendants' conduct, Plaintiff suffered damages for violations of the First and Fourth Amendment including retaliation for petitioning the government for the redress of grievances.

## JURY DEMAND

122.    Plaintiff hereby demands a trial by jury of all triable issues, per FED. R. CIV. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jack Miller, demands judgment and pray for the following relief, against Defendants, either individually or jointly, and severally:

a. A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that seek to collect, retain, and surveil law-abiding citizens for no lawful purpose or practice, and then share this information with others, is in retaliation for exercising their Constitutional rights, violate the First Amendment to the United States Constitution;

b.  A Declaration that Defendant City's official policy used to "squash the rebel" by unlawfully detaining, arresting, and assaulting armed constitutional rights activists who are exercising their First Amendment rights and not breaking any laws or committing any crimes violates the First and Fourth Amendments of the United States Constitution.

c.  Injunctive relief barring Defendants' conduct and from maintaining their policies, practices, and custom of collecting, retaining, and surveilling Plaintiff and individuals who lawfully exercise their First Amendment rights, and then sharing this information without any lawful or legitimate purpose, which is in violation of 42 U.S.C. § 1983;

d.  Injunctive relief baring Defendants from enforcing Defendant City's official policy of unlawfully detaining, arresting, and assaulting armed constitutional rights activists who are lawfully exercising their First Amendment rights and not breaking any laws or committing any crimes.

e.  Full and fair compensatory damages in an amount to be determined by a jury;

f.  Nominal Damages for retaliation by Defendants for Plaintiff's exercise of his First Amendment rights of free expression and petitioning for the redress of grievances, as the Court finds appropriate, from one or more Defendants;

g.  Punitive damages from one or more Defendants to be determined by a jury;

h.  Pre-judgment and post-judgment interest from one or more Defendants;

i.  Reasonable attorney's fees and costs of this action; and

j.  Any such other relief as appears just and proper.

Respectfully Submitted,


**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
**COUNSEL FOR PLAINTIFF**